MARK W. POE (BAR NO. 223714)
 mpoe@gawpoe.com
RANDOLPH GAW (BAR NO. 223718)
 rgaw@gawpoe.com
VICTOR MENG (BAR NO. 254102)
 vmeng@gawpoe.com
FLORA VIGO (BAR NO. 239643)
 fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA  94111
Telephone:     415-766-7451

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, and all others similarly situated, | Case No.:  4:24-cv-03713 |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| FENIX INTERNATIONAL LIMITED; FENIX INTERNET LLC, | |
| Defendants. | |

**INTRODUCTION**

1.      California's Automatic Renewal Law (the "ARL") requires that when a business enrolls a California consumer in a service that automatically renews at the end of an initial enrollment period, the business must disclose the terms of that automatic renewal "in a clear and conspicuous manner" before the initial subscription is consummated, and thereafter send the user an acknowledgment further describing the auto-renewal terms and providing information as to how the user can readily cancel before incurring an auto-renewal charge.

2.      Defendants own and operate the popular sexual content platform "OnlyFans," through which consumers can "subscribe" to the OnlyFans accounts of one or more among thousands of different performers, known as "content creators."  Consumer subscriptions are the cornerstone of Defendants' revenue model.  Yet in violation of California's ARL, by failing to clearly and conspicuously advise its customers that their initial subscription to a creator will be automatically renewed, OnlyFans tricks its customers into making recurring payments, triggering a charge to the customer's debit or credit card ranging from $4.99 to $49.99 for the following month.

3.      Plaintiffs John Doe 1 and John Doe 2 bring this action to obtain injunctive and monetary relief for themselves and all other similarly situated OnlyFans customers in California, who entered an automatic renewal plan without receiving the pre- and post-subscription disclosures that are required by California law.

**PARTIES**

4.      Plaintiff John Doe 1 is a resident of Contra Costa County, California.

5.      Plaintiff John Doe 2 is a resident of Riverside County, California.

6.      Plaintiffs John Doe 1 and John Doe 2 seek to proceed anonymously under the Ninth Circuit authority holding that "[i]n this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981)).  Due to the adult-oriented content of OnlyFans, John Doe 1 and John Doe 2

1

would be subject to personal embarrassment should their true names be forever linked to this case. The proceedings in this case are likely to reveal John Doe 1 and John Doe 2's particular sexual interests, which would potentially expose them to ridicule and embarrassment from friends, family, and co-workers. In particular John Doe 2's real name is spelled in a particular manner that makes his true identity readily apparent from any Google search.

7.      Allowing John Doe 1 and John Doe 2 to proceed anonymously will work no prejudice to Defendants, because their exact identity can be known to Defendants via the usernames (alleged below) through which they accessed OnlyFans. To avoid any uncertainty in that regard, Plaintiffs' counsel will expressly identify John Doe 1 and John Doe 2 to Defendants' counsel at the time it serves the summons and complaint upon them. John Doe 1 and John Doe 2 are prepared to make a formal motion for leave to proceed anonymously at any time the Court directs them to do so.

8.      Defendant Fenix International Limited ("FIL") is a business entity incorporated and registered in England and Wales, with its headquarters in London. FIL is the counterparty to the Terms of Service that customers of OnlyFans.com enter when they become members of the site, and thus does business throughout the United States, including by entering contracts with thousands of residents of California. On information and belief, FIL is the business entity that receives some or all of the automatic renewal fees that are paid by OnlyFans customers and that are the subject of this complaint.

9.      Defendant Fenix Internet LLC is a Delaware limited liability company with its principal place of business also in Delaware. On information and belief, Fenix Internet LLC is a wholly owned subsidiary of FIL, and is the company through which OnlyFan's content creators receive payment. Accordingly, Fenix Internet LLC is, or has been, continuously in possession of money wrongfully taken from Plaintiffs and the class they seek to represent, and which is to be restored to those consumers through this lawsuit.

## JURISDICTION

10.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(d). Specifically, the class alleged in this complaint consists of at least 10,000 members, the

vast majority (if not all) of whom are citizens of California, while Defendant Fenix International Limited is a citizen of England and Wales, and Defendant Fenix Internet LLC is a citizen of Delaware.  With monthly subscription renewal fees ranging from $4.99 to $49.99 per month (with an average of $12), and with the class members' 4-year limitations period having been tolled for an additional approximately 19 months based on a previously filed class action alleging similar claims, the amount in controversy greatly exceeds $5 million.

11.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of conducting business with Plaintiffs and thousands of other California residents by entering contracts of indefinite duration with Plaintiffs and all other members of the proposed class.  On information and belief, the total value of the contracts between Defendants and California residents exceeds $400 million annually.

12.     Plaintiffs' and the class members' claims specifically arise out of Defendants' forum-related conduct in entering contractual relationships with those 10,000+ California residents.  An out-of-state business entity that enters into tens of thousands of contracts with residents of California, from which relationship it derives hundreds of millions of dollars annually can hardly be surprised at being hailed into court here, nor contend that it is "unfair" to be held accountable for that forum-related activity.

**VENUE**

13.     Venue is proper in this jurisdiction because Plaintiff John Doe 1 is a resident of Martinez, California in Contra Costa County, and entered into the transactions at issue in this case in Contra Costa County.

**APPLICABLE LAW**

14.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December l, 2010 as Business & Professions Code section 17600 *et seq.*, commonly known as the Automatic Renewal Law or "ARL."  The ARL was passed because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the

product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

15. The Assembly Committee on the Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

16. The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a. Fail to present the automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card as part of the automatic renewal plan or arrangement, (4) the length of the automatic renewal term or that the service is continuous; and (5) the minimum purchase obligation, if any.

b. Charge the consumer's credit or debit card for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms, including the terms of an automatic renewal offer

or continuous service offer that is made at a promotional or discounted price for a limited period of time.

c. Fail to provide an acknowledgment that includes the automatic renewal terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. Section 17602(c) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation, and that mechanism must be described in the acknowledgement.

17. If a business provides any goods, wares, merchandise, or products to a consumer under a purported automatic renewal or continuous service arrangement without first obtaining the consumer's affirmative consent to an agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to be an unconditional gift to the consumer, who may use or dispose of them without any obligation whatsoever. While the ARL does not include a private right of action, a violation gives rise to restitution and injunctive relief under the Unfair Competition Law.

18. Plaintiffs' separate request for public injunctive relief is not sought for the Class but rather on behalf of the general public of California, i.e., consumers in California who have yet to transact with Defendants but are at risk of doing so in the future. The OnlyFans Platform continues to generate new customers on an ongoing and continuing basis and therefore, as time passes new members of the general public are at risk of new harms and injuries from the legal violations complained of herein, unless those practice are enjoined and corrected so that they fully comply with the ARL, UCL, and other applicable law. Plaintiffs bring this action on behalf of such persons in their individual capacities and class certification is not necessary for this type of public injunctive relief. This action and the relief sought for the general public will provide a public benefit.

### FACTUAL ALLEGATIONS

19. Every subscription to a creator's content on OnlyFans has violated and continues to violate the ARL in numerous ways, but primarily by:

(1) failing to "present the automatic renewal offer terms . . . in a clear and conspicuous manner" before payment is made, in violation of section 17602(a)(1);

(2) charging the consumer's credit or debit card "without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms" in violation of section 17602(a)(2); and

(3) failing to "provide an acknowledgment that includes the automatic renewal offer terms . . . cancellation policy, and information regarding how to cancel" in violation of section 17602(a)(3).

20.     The foregoing violations are all made obvious through an illustration of an exemplary enrollment to the OnlyFans account of the popular Kardashian-adjacent celebrity and OnlyFans content creator known as "Blac Chyna," who was reported to have been the top-earning creator on OnlyFans for 2021, generating revenue for Defendants of $20 million per month prior to terminating her account.

21.     A user joins OnlyFans by navigating to OnlyFans.com and clicking a hyperlink titled "Sign up for OnlyFans."  The user then creates an account by choosing a user name, and inputting their email address and choosing a password.  After receiving an email at that address to "verify your email address," the user is taken to a "Home" screen with a menu on the left, a middle section with a selection of "posts" made by users and creators, a search tool for finding creators, and a list of "suggestions" on the right, highlighting certain content creators whose profiles the user can scroll through.

22.     When a user searched for and then navigated to the profile page for Blac Chyna, for example, they are presented with the following screen:



23.     Upon clicking the "SUBSCRIBE" button, the user is advised of certain "benefits" from the subscription and asked to add a payment card:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24.    The user then inputs their credit card information, and receives an on-screen confirmation that "You will be charged $19.99," with no suggestion that the charge would be recurring:



25.    After clicking the "PAY" link on that screen the user is returned to the creator's profile page, where a box in the middle of the page noted that the user was "SUBSCRIBED" in bold blue font, and with only a one-word indication (in smaller, lower-case, light gray font) that the subscription "Renews," and with the renewal date indicated in similarly small, light-gray font:



26.     As shown, the creator's profile page does not include any indication as to how one can "unsubscribe," or otherwise cancel future monthly payments, even had he or she known to expect future monthly payments.

27.     Upon making payment, the user will sometimes receive a confirmation email at the address they used in the sign-up process.  That bare-bones confirmation email does not provide any information or reminder that the charge will be recurring or automatically renew, nor does it provide any information as to how the user can "unsubscribe," Defendants' cancellation policy, or any of the other information required by section 17602(a)(3):



28.     In other circumstances, the details of which are unknown to Plaintiffs prior to taking discovery in this matter, the user receives no acknowledgement whatsoever after making payment, as exemplified by the instance where one paid $6.99 to follow the creator known as @annie_kay.

29.     Furthermore, nowhere in the foregoing enrollment process to a particular creator's account do Defendants "first obtain[ ] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms," which is in further violation of section 17602(a)(2).  In particular, on the webpage in the sign-up process where a user selects a username

and inputs his or her email address and selects a password, Defendants include (in light grey and light blue, extremely small text) a notification that "By signing up you agree to our Terms of Service and Privacy Policy," with hyperlinks to those documents, as seen in the following screenshot:



30.     Clicking on the "Terms of Service" link takes a user to a separate webpage that consists of a 36-page set of "terms." Nowhere in that document are the terms of Defendants' automatic renewal offer set forth clearly and conspicuously either, in further violation of ARL section 17602. Rather, the automatic renewal explanation is buried on the eighteenth page of that document, as section 8.h under a heading titled "Terms of Use for Fans." There, it is presented in a way that is indistinguishable from any other term in the agreement.

31.     All of these violations of the ARL occur systematically, in that each user who subscribes to each content creator's account receives the exact same legally inadequate disclosures on the front end of the transaction, and the exact same inadequate "acknowledgement" (or lack of any acknowledgement whatsoever) on the back end of the transaction.

32.     With minor variations, this enrollment and subscription process has been substantially identical throughout the limitations period at issue in this action.  In all events, at no point throughout the class period have Defendants fully complied with the requirements of the ARL.

33.     Plaintiff John Doe 1 was subject to this same pattern of violation of the ARL in the period from approximately June 2022 to January 2024, when under the username @u23099782 he subscribed to follow the accounts of OnlyFans creators @povlotti,  @lupebaddy, @bellacortexmx, @jenny24cute.  John Doe 1 was subject to one or more automatic renewal fees for each of these creators.  The specific details of those amounts and dates will be contained within Defendants' billing records for John Doe 1's user accounts.

34.     Had John Doe 1 received the clear and conspicuous disclosures required by the ARL at the time he initially subscribed, and the post-subscription acknowledgment required by section 17602(a)(3) with details on the auto-renewal offer and a readily accessible means of canceling, he would have canceled his subscription prior to the renewal date, and would not have lost to Defendants the money associated with those auto-fees.

35.     Plaintiff John Doe 2 was subject to this same pattern of violation of the ARL when under the username @Ehuhhhhhh he subscribed to follow the accounts of, among others, OnlyFans creators @izabellaxo, @beagt00 @karleystokes.  When subscribing to those accounts John Doe 2 failed to receive an adequate set of disclosures at the time of that transaction to clearly and conspicuously advise him that his card would be automatically billed upon expiration of his initial enrollment period.  Similarly, John Doe 2 did not receive any post-transaction acknowledgement advising him of the matters set forth in section 17602(a)(3).

36.     When a Fan contacts Defendants to express surprise at having been automatically billed for a successive month, Defendants respond with a more fulsome explanation of the auto-renewal process.  A sample of that communication is:

> Hi there,
>
> Thanks for reaching out.
>
> The auto-renewal for the subscription to @taste.of.heaven was not

disabled before the next billing date. The auto-renew feature was enabled from the start, I am sorry you did not notice this at first.

You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and make sure that Auto-Renew for your subscription is disabled: https://onlyfans.com/my/subscriptions/

If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date - it means that Auto-Renew is already disabled.

Users can unsubscribe anytime, but there are no refunds as all subscriptions are final and non-refundable. Please see more details at this page: https://onlyfans.com/terms

Feel free to let us know if we can help you with anything else in the future.

Evans

37.     In other words, Defendants fully acknowledged the likelihood that a Fan will "not notice this [auto-renewal billing] at first," but nevertheless advise that "there are no refunds as all subscriptions are final."

38.     In another instance where a Fan complained of being automatically charged a renewal fee and thereafter complained, Defendants responded with a similar message:

Hi there,

Thank you for using OnlyFans.

According to our system, your account associated with the email address noahbreeze@gmail.com was charged $14.99 on Jan 24, 2022 for the subscription renewal to the user @cheriedeville. The auto-renew feature is enabled by default.  You have been notified about upcoming renewals via feed hints.

You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and make sure that Auto-Renew for your subscription is disabled: https://onlyfans.com/my/subscriptions/active

If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date- it means that Auto-Renew is already disabled.  Simply click on the corresponding button to change the Auto-Renew status.

1

2

Users can disable their subscriptions anytime, but all payments on
our platform are final and non-refundable. Please see more details
on this page: https://onlyfans.com/terms.

3

Check out some useful info here and feel free to let us know
anytime you need help.

4

Dwayne

5

OnlyFans

6      39.     In other words, Defendants fully acknowledged that "[t]he auto-renew feature is

7   enabled by default," and that the primary notice of such a renewal were "hints" the Fan

8   supposedly received in his "feed."

9                              **CLASS ALLEGATIONS**

10     40.     John Doe 1 and John Doe 2's experiences with Defendants' deceptive automatic

11   renewal scheme are far from unique.  Indeed, every California consumer who subscribed to every

12   creator account within the relevant statute of limitations period failed to receive the disclosures

13   that California law requires in substantially the same way that John Doe 1 and John Doe 2 failed

14   to receive them.  Because all of those automatic renewal fees assessed against California

15   consumers were "unlawful," B&P Code § 17602(a), John Doe 1 and John Doe 2, and all members

16   of the class they seek to represent are entitled to restitution of the fees they paid, in every

17   successive month for which they were assessed.

18     41.     This action follows a prior class action that had been filed in Riverside County

19   Superior Court on October 24, 2022 which alleged the same class.  The action had been removed

20   to the Central District of California on December 5, 2022, as *Muto et al. v. Fenix International

21   Limited, et al.*, No. 22-cv-02164.  The district court dismissed that complaint on May 2, 2024,

22   erroneously ruling that Defendants are not subject to personal jurisdiction in California.  Pursuant

23   to the rules for tolling the limitations period for absent class members under *American Pipe &

24   Construction Co. v. Utah*, 414 U.S. 538 (1974), the limitations period applicable to this case

25   reaches back to four years prior to the filing of the *Muto* action—October 24, 2018.

26     42.     John Doe 1 and John Doe 2 bring this lawsuit as a class action under Code of Civil

27   Procedure § 382 on behalf of the following Class:

28            All individuals in California who subscribed to the accounts of one

- 13 -

or more OnlyFans creators within the limitations period, and who
were subsequently assessed an automatic renewal fee associated
with those account(s), where the charge for that fee was not charged
back to Defendants.

43.     Excluded from the Class are all employees of Defendants, and the judicial officers
to whom this case is assigned.

44.     Plaintiffs reserve the right to amend this class definition as necessary and
appropriate prior to moving for class certification.

45.     The proposed class is so numerous that joinder of all class members would be
impracticable.  Upon information and belief, Plaintiffs allege that the class includes at least
10,000 members.  The class members are all ascertainable from records in possession of
Defendants, specifically Defendants' customer and billing records.  Furthermore, Defendants'
actions against class members are generally applicable to every member of the proposed class,
thereby making appropriate restitution and further injunctive relief appropriate as to the entire
proposed class.

46.     The questions of law and fact that are determinative of Plaintiffs' allegations are
shared by all members of the class, and greatly predominate over any individual issues.  Common
questions include, without limitation:  (1) whether Defendants present all statutorily-mandated
automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of
California law and in visual proximity to a request for consent to the offer; (2) whether
Defendants provide the post-transaction acknowledgement disclosures required by section
17602(a)(3) of the ARL; (3) Defendants' policies, practices and procedures for obtaining
affirmative consent from their California customers before charging their credit or debit card; and
(4) the appropriate remedies for Defendants' conduct.

47.     Plaintiffs' claims are typical of the claims of the class members in that they
received the exact same inadequate pre-transaction disclosures as received by all members of the
class, and similarly received an inadequate post-transaction "acknowledgement" that failed to
include the contents required by section 17602(a)(3).  Plaintiffs' claims are further typical in that
their cards were charged for an automatic renewal fee without Defendants having first obtained
their affirmative consent to an agreement containing clear and conspicuous disclosure of all

automatic renewal offer terms.  Plaintiffs furthermore have no interests that are adverse to those of the absent class members, and they have committed to fairly and adequately protect the interests of those class members.

48.     A class action is superior to other methods for resolving this controversy.  Because the amount of restitution to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their statutory rights have been violated, so they would be unlikely to pursue single-party remedies on their own behalf absent a class action.  Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

## FIRST CAUSE OF ACTION

### (Violation of the California Unfair Competition Law, B&P Code § 17200 *et seq.*)

49.     Plaintiffs hereby incorporate the allegations of all preceding paragraphs as though fully set forth herein.

50.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. *Id.* § 17204. Such a person may bring such action on behalf of her- or himself and others similarly situated who are affected by the unlawful business practice or act.

51.     The predicate unlawful acts described above as violating the ARL do not require any showing of fraud or deception to establish a violation. The violations of the ARL are established through objective facts and criteria. As a result, a showing of individual reliance is not a required element of this claim.

52.     In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful business practices by, *inter alia* and without limitation: (a) failing to provide the terms of Defendants' OnlyFans Subscription offer terms "in a clear and

conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) failing to obtain the affirmative consent of consumers to those terms before charging for the OnlyFans Subscription, in violation of *id.* § 17602(a)(2); (c) failing to provide an acknowledgment that includes the OnlyFans Subscription offer terms, Defendants' cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by OnlyFans consumers, in violation of *id.* § 17602(a)(3); and (d) failing to provide an immediate, one-step method of online cancellation pursuant to ARL section 17602(d)(1)(A)–(B).

53.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

54.     Plaintiffs have lost money as a result of Defendants' unlawful acts of unfair competition, in that Plaintiffs would not have incurred the automatic renewal fees associated with their initial purchases of OnlyFans Creator content had Defendants fully, clearly, and conspicuously apprised them of the terms of the automatic renewal offer described herein.

55.     As a result of their violations of the ARL, Defendants never obtained Plaintiffs, or the Class's, affirmative consent to the automatically renewing charges, *see id.* § 17602(a)(2), and all Creator Content available as a result of those charges were unconditional gifts, *see id* § 17603, for which Defendants could not lawfully charge Plaintiffs and the Class.

56.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the members of the class are entitled to restitution of all amounts paid to Defendants in connection with an automatic renewal membership program over the four years preceding the filing of the initial class complaint on October 24, 2022, and continuing until the earlier of the resolution of this action, or the time that Defendants cease the acts of unfair competition alleged herein.

57.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Cal. Bus. & Prof. Code § 17203, on behalf of the class, and for the benefit of the general public of the State of California, Plaintiffs seeks an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

58.     Plaintiffs on behalf of the general public of the State of California, seek a court

order for public injunctive relief, declaratory relief and all other relief deemed appropriate in the circumstances including that enjoining Defendants from such future misconduct, and any other such orders that may be necessary to rectify Defendants' unlawful business practices and conduct. Such relief is appropriate and necessary to protect members of the general public who have not yet transacted with Defendants but are likely to and therefore remain at risk of future harm and thus, need protection from ongoing and continuing violations of the ARL and UCL, as described above. Such relief will create a public benefit.

59.    Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5 and other applicable law for bringing this action.

**PRAYER**

Plaintiffs pray for judgment on behalf of themselves and all members of the class alleged herein, against Defendants, as follows:

1.    For restitution of the amounts unlawfully charged Plaintiffs and members of the class in violation of the ARL;

2.    For prejudgment interest;

3.    For declaratory and injunctive relief as may be appropriate;

4.    Separate from any Class relief, public injunctive relief against further violations of the ARL by Defendants;

5.    For reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and all other applicable law;

6.    For costs of suit; and

7.    For all such other relief as the Court deems just and proper.

1

Dated: June 20, 2024                    GAW | POE LLP

2

3                                       By:  _s/ Mark Poe_____
                                             MARK POE
4                                            Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28