MARK W. POE (BAR NO. 223714)
 mpoe@gawpoe.com
RANDOLPH GAW (BAR NO. 223718)
 rgaw@gawpoe.com
VICTOR MENG (BAR NO. 254102)
 vmeng@gawpoe.com
FLORA VIGO (BAR NO. 239643)
 fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA  94111
Telephone: 415-766-7451

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, and all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>FENIX INTERNATIONAL LIMITED; FENIX INTERNET LLC,<br>          Defendants. | Case No. 3:24-cv-03713-CRB<br><br>Hon. Charles R. Breyer<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:        September 20, 2024<br>Time:       10:00 a.m.<br>Courtroom:  6 |

1

## TABLE OF CONTENTS

2

3
SUMMARY OF ARGUMENT ................................................................................. v

4
INTRODUCTION ............................................................................................... 1

5
FACTUAL AND PROCEDURAL BACKGROUND .................................................. 1

6
    A.  Plaintiffs' Allegations........................................................................... 1

7
    B.  The *Muto* Case in the Central District of California ......................................... 1

8
ARGUMENT ................................................................................................... 3

9
I.    BOTH FIL AND FENIX INTERNET ARE SUBJECT TO SPECIFIC JURISDICTION IN
    CALIFORNIA. ............................................................................................ 3

10
    A.  Defendants Purposefully Availed Themselves of the Privilege of Doing Business in
    California By Entering Thousands of Long Term Contracts with California Residents.... 4

11

12
    B.  The *Muto* Opinion's Three-Sentence Analysis of Personal Jurisdiction Should Not Be
    Persuasive. .......................................................................................... 7

13
II.   THE FORUM SELECTION CLAUSE IS UNENFORCEABLE BECAUSE IT WOULD
    CONTRAVENE TWO STRONG CALIFORNIA POLICIES. ................................. 8

14

15
    A.  *Losson* Is Inapposite Because the Plaintiff There Did Not Contend that Enforcing the
    Forum Selection Clause Would Contravene a Strong Public Policy. ............................... 9

16
    B.  Litigation in England or Wales Would Foreclose a Class Action. .................................. 10

17
    C.  There is No Analogue to the ARL in English Law. ...................................................... 11

18
    D.  Defendants Identify no English Analog to California's "Public Injunction." ................. 12

19
III.  PLAINTIFFS' ALLEGATIONS ESTABLISH THEIR STANDING UNDER BOTH
    ARTICLE III AND THE UCL. ....................................................................... 13

20

21
IV.  PLAINTIFFS HAVE STATED A CLAIM AGAINST FENIX INTERNET. ..................... 15

22
CONCLUSION ................................................................................................ 15

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*America Online, Inc. v. Superior Court of Alameda County (Mendoza)*,
    90 Cal. App. 4th 1 (2001)....................................................................................................... 8, 10

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016)...................................................................................................... 14

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008)...................................................................................................... 6

*Camreta v. Greene*,
    563 U.S. 692 (2011) ..................................................................................................................... 7

*Carter v. City of Los Angeles*,
    224 Cal. App. 4th 808 (2014).................................................................................................... 11

*Davis v. Cranfield Aerospace Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023)............................................................................................... 3, 4, 5

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
    392 F. Supp. 3d 1074 (N.D. Cal. 2019) ................................................................................... 14

*Doe 1 v. AOL, LLC*,
    552 F.3d 1077 (9th Cir. 2009)............................................................................................... 8, 10

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002)..................................................................................................... 4

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023)................................................................................................. 3, 7

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) .............................................................................................. 14

*King v. Bumble Trading, Inc.*,
    393 F. Supp. 3d 856 (N.D. Cal. 2019) ................................................................................... 9, 12

*Kissel v. Code 42 Software, Inc.*,
    2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ....................................................................... 9, 12

*Lopez v. Stages of Beauty, LLC*,
    307 F. Supp. 3d 1058, 1070 (S.D. Cal. 2018) ..................................................................... 13, 14

*Losson v. Union Des Associations Europeennes De Football*,
    2024 WL 3406987 (N.D. Cal. July 11, 2024)....................................................................... 9, 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)...................................................................... 3

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945, 951 (2017) ................................................................... 12, 13

*Moore v. Mars Petcare US*,
    966 F.3d 1007, 1020 (9th Cir. 2020)........................................................ 13

*Muto v. Fenix Int'l Ltd.*,
    2024 WL 2148734 (C.D. Cal. May 2, 2024) ..................................... *passim*

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019)................................................................ 9, 13

*Rogers v. Lyft, Inc.*,
    452 F. Supp. 3d 904 (N.D. Cal. 2020) ..................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..................................................................... 4

*Starlight International, Ltd. v. Lifeguard Health, LLC*,
    No. 08-cv-1894-RS, 2008 WL 2899903 (N.D. Cal. July 22, 2008) ........................ 6

*Stomp, Inc. v. NeatO, LLC*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999)..................................................... 6

*Vargas v. JP Morgan Chase Bank, N.A.*,
    30 F. Supp. 3d 945 (C.D. Cal. 2014) ..................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)................................................................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...................................................................... 14

Cal. Bus. & Prof. Code § 17602(a)(2) ............................................................. 15

Cal. Bus. & Prof. Code §§ 17600 *et seq.* ........................................................ 1

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................ 1

**Other Authorities**

N.D. Cal. L.R. 7-9(b)(3)..................................................................................... 3

iii

C.D. Cal. L.R. 7-18(a)-(c) ........................................................................................................... 3

## SUMMARY OF ARGUMENT

In this action, a proposed class of "at least 10,000 members" who entered contracts to view content available on the adult-themed OnlyFans.com website allege that Defendants Fenix International Limited ("FIL") and Fenix Internet LLC ("Fenix") charged them illegal "subscription renewal fees" in violation of California's Automatic Renewal Law. Compl. ¶ 10. Defendants move to dismiss the complaint on four grounds, but none of them is availing.

**First**, Defendants argue that they are not subject to personal jurisdiction in California because the complaint fails to allege that Defendants "*purposefully directed* [the challenged] acts at California." Mem. at 6 (emphasis in original). But Defendants' argument overlooks that personal jurisdiction is also established where "[t]he non-resident defendant . . . consummate[s] some transaction with the forum or resident thereof . . . or . . . purposefully avails himself of the privilege of conducting activities in the forum." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161-62 (9th Cir. 2023) (citation omitted). Here, Plaintiffs allege that Defendant FIL—via its ownership of OnlyFans.com—"enter[ed] contracts with thousands of residents of California." Compl. ¶ 8. Defendants' own moving papers show that class members' contractual relationships with FIL typically span multiple years, and involve dozens if not hundreds of financial "transaction[s] with the forum." *Davis*, 71 F.4th at 1161; Decl. of Lee Taylor, Exs. F, G (Plaintiffs' transaction histories). So even supposing Defendants did not "purposely direct" the OnlyFans website at California, they plainly "consummate some transaction[s] with the forum or resident[s] thereof," and "purposefully avail[]" themselves of doing business in California.

**Second**, Defendants argue that the forum selection clause in FIL's Terms of Service requires dismissal in favor of adjudication in "England and Wales." Mem. 8-9. But the Ninth Circuit holds that "a forum selection clause [is] unenforceable 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)). Multiple "judicial decision[s]" from state and federal courts hold that both the mechanism of a consumer class action and the substantive provisions of California's Automatic Renewal Law ("ARL") are strong public policies of the state

of California.  *See, e.g.*, *id.* at 1083 ("California public policy [] strongly favors consumer class actions."); *America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 90 Cal. App. 4th 1, 15 (2001) ("The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the TOS forum selection clause."); *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (holding that the ARL reflects a *fundamental policy* of California); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019) ("the Renewal Law nonetheless represents a fundamental public policy").

**Third**, Defendants argue that Plaintiffs lack standing because they fail to allege "'actual reliance' on false or misleading statements."  Mem. at 10.  But Plaintiffs' claims are based on the UCL's "unlawful" prong, not its "fraudulent" prong, Compl. ¶¶ 51-53, and "UCL actions not based on a fraud theory do not require actual reliance."  *Turcios v. Carma Lab'ys, Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014) (citing *In re Tobacco II*, 46 Cal. 4th 298, 326 (2009)).  "In those actions, the plaintiff must simply show that the alleged violation caused or resulted in the loss of money or property."  *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1, 12 (2012).  Nevertheless, Defendants argue that one can *infer* from Plaintiffs' transaction histories that they would have lost the same money even had Defendants complied with the ARL.  At this stage, however, inferences are to be drawn in favor of the plaintiff, not the defendant.  Here, Plaintiffs allege that they "would not have incurred the automatic renewal fees . . . had Defendants fully, clearly, and conspicuously apprised them of the terms of the automatic renewal offer described herein."  Compl. ¶ 54.

**Fourth**, Defendant Fenix Internet argues that Plaintiffs fail to state a claim because Fenix Internet "does not own or operate OnlyFans, and is not responsible for the representations or disclosures that do or do not appear on the platform."  Mem. at 11.  But the ARL makes it independently "unlawful" to "charge the consumer's credit or debit card" while in derogation of the ARL's requirements.  Cal. Bus. & Prof. Code § 17602(a)(2).  And Defendants concede that Fenix Internet "collect[s] payments made by Fans," *i.e.*, Plaintiffs and members of the class.  Mem. at 7 n.5.  In other words, *it* is the entity that charges Plaintiffs' and the class members' credit cards in violation of § 17602(a)(2), after its parent company FIL fails to provide the renewal disclosures required by the ARL's other subsections.

**INTRODUCTION**

This case arises from the fact that Defendants have enrolled thousands if not tens of thousands of California residents into paying money to view content from "performers" on Defendants' popular "OnlyFans.com" website, without first explicitly informing those users that their payment will create an automatically renewing monthly subscription.  That failure is a violation of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600 *et seq.*, and thereby a violation of the "unlawful prong" of California's Unfair Competition Law.  Cal. Bus. & Prof. Code §§ 17200 *et seq*.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Plaintiffs' Allegations**

The substance of this case is simple.  Plaintiffs allege that when they (and all other California users of OnlyFans) click to view the paid content of an OnlyFans "creator," they are automatically enrolled in a renewing monthly subscription to that creator's fan-page, without receiving either the 'pre-enrollment' or 'post-enrollment' disclosures that are required by the ARL, or an immediately apparent means of cancellation.  Compl. ¶¶ 16, 52.  The complaint illustrates these failures with sequential screenshots that walk through the entire enrollment and subscription process, to visually demonstrate the several ways in which Defendants' process fails to satisfy the ARL's requirements.  *Id.* ¶¶ 21-30.  On behalf of themselves and a clearly defined class, Plaintiffs seek restitution of the subscription fees they were unlawfully charged as a result of Defendants' violations, plus public injunctive relief to forestall members of the general public who have not yet been subjected to Defendants' ARL violations from falling victim in the same way that Plaintiffs and members of the class did.  *Id.* ¶¶ 56-58.

**B.  The *Muto* Case in the Central District of California**

Defendants perceive this case as "a blatant attempt by Plaintiffs' counsel to evade a May 2, 2024 decision" in *Muto v. Fenix International Ltd.* from the Central District of California, in which similar claims brought by four other OnlyFans users were dismissed upon the conclusion that Defendants are not subject to personal jurisdiction in California.  Summ. of Argument at *v*.  But there is no "evasion" involved, nor does the filing of this complaint constitute "forum shopping."

Rather, in the *Muto* case, Defendants won judgment in their favor, and the plaintiffs in that case lost the judgment.  *See* C.D. Cal. Case No. 5:22-cv-02164-SSS-KK (ECF No. 62).  Defendants complain that Plaintiffs' counsel did not appeal that judgment, but instead filed a new case.  But they cite no authority for the proposition that a lawyer must spend years exhausting potential appeals of a given legal theory prior to starting back at square one.  If the first judgment against the theory was correct, then the same fate will befall the second case.  In contrast, *all* of the cases about "forum shopping" that Defendants catalog in their footnote 1 involve the completely different circumstance of a plaintiff or his counsel filing a new case in the face of an unfavorable *interlocutory* ruling (like denial of class certification), or where the plaintiff or his counsel voluntarily *chose* to dismiss and start over.  Here, neither John Doe 1 nor John Doe 2 were involved in the *Muto* case, and their counsel obviously did not *voluntarily* have judgment entered against them and their clients.  Nor is counsel aware of precedent suggesting that where a law firm represents clients pursuing a given legal theory, all cases it files on that theory must be filed in only one district.  That is especially true where, as here, both the firm and the lead plaintiff are residents of *this* district.

While it is true that counsel could have appealed the *Muto* judgment, class counsel owe a duty to the thousands (or tens of thousands) of absent class members.  Those thousands of victims of Defendants' unlawful credit card charges would not be well-served by a multi-year detour to the Ninth Circuit (and likely petition for *certiorari*).  That is especially so where the outcome of that years-long delay would have been all but inevitable:  As shown *infra* at 7-8, the *Muto* court plainly erred by disregarding the significance of the fact that this case involves thousands of years-long *contracts* between California residents and the non-resident defendant.  Instead of considering contract cases, the *Muto* court analogized Plaintiffs' claims to trademark cases, in which there was no contractual relationship at all between the out-of-state website defendant and the in-state plaintiff.  *See Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734, at *4 (C.D. Cal. May 2, 2024) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) and *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091-92 (9th Cir. 2023)).  Even then, both of those cases concluded that the website defendant *was* subject to specific personal jurisdiction in California.

*Mavrix*, 647 F.3d at 1229-31; *Herbal Brands*, 72 F.4th at 1093-94.[1]  For that and other reasons, Plaintiffs respectfully suggest that the *Muto* court's three-sentence discussion of personal jurisdiction is not strong persuasive authority.  *See Muto*, 2024 WL 2148734, at *4.

## ARGUMENT

## I. BOTH FIL AND FENIX INTERNET ARE SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA.

Defendants are subject to specific jurisdiction in California because FIL entered into thousands of long-term contracts with California residents, and Fenix Internet thereafter facilitated the processing of the financial transactions by which those thousands of residents paid money to FIL pursuant to the terms of those contracts.  Compl. ¶¶ 9-11.

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161-62 (9th Cir. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)).  In moving to dismiss the Complaint, Defendants do not contest that Plaintiffs' claim "arises out of or relates to" the predicate forum-related activities.  Mem. at 6-7.  Nor do they dispute that exercise of jurisdiction would "comport with fair play and substantial justice" under the third factor.  *Id.*  Instead, they contest only the first factor.   *Id.*    That argument fails, however, because Defendants

---

[1] Defendants also complain that counsel did not file "a motion for reconsideration" in *Muto*.  Mem. at 4.  But while this District permits reconsideration motions for failure to consider "dispositive legal arguments which were presented to the Court," L.R. 7-9(b)(3), the Central District does not. C.D. Cal. L.R. 7-18(a)-(c).  So the *Muto* plaintiffs could not have legitimately moved for reconsideration.

3

"consummate[d] [thousands of] transaction[s]" with residents of California, and "purposefully avail[ed]" themselves of the privilege of doing business in California. *Davis*, 71 F.4th at 1161-62.

### A. Defendants Purposefully Availed Themselves of the Privilege of Doing Business in California By Entering Thousands of Long Term Contracts with California Residents.

Defendants' argument against the first factor in the *Davis*/*Schwarzenegger* test largely misses the mark. Defendants entirely ignore that the first factor is satisfied where an out-of-state defendant "purposefully avails himself of the privilege of conducting activities in the forum." *Davis*, 71 F.4th at 1162. Instead, their *only* argument on this factor is that FIL did not "purposefully direct" any acts at California. Mem. at 6. Accordingly, they argue that Plaintiffs "*must* show that the defendant '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (emphasis added, quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). But as *Dole* itself explains, it addressed only the "express aiming" aspect of the test, because (at the time) the Ninth Circuit deemed that to be the only appropriate test "in intentional tort cases." 303 F.3d at 1111.

As an initial matter, this is not an "intentional tort case[]," *id.*, so under the rubric used in *Dole*, the applicable test would be "purposeful availment," not "purposeful direction." *See Schwarzenegger*, 374, F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract."). More recently, however, the Ninth Circuit has clarified that it "doesn't serve the purposes of due process" to maintain "a 'rigid dividing line'" under which intentional torts are evaluated under a "purposeful direction" test, while contract disputes are evaluated for "purposeful availment." *Davis*, 71 F.4th at 1162. Quoting an intervening *en banc* opinion, *Davis* explained that "the first prong 'may be satisfied by purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

Defendants thus miss the mark in arguing that the complaint must be dismissed because Plaintiffs "fail to allege facts showing that FIL or Fenix Internet *purposefully directed* such acts at California." Mem. at 6 (emphasis by Defendants). As *Davis* explains, to determine whether a defendant is subject to personal jurisdiction for having purposefully availed itself of conducting

4

1   business activities in a state, "we examine whether the defendant 'deliberately reached out beyond

2   [its] home—by, for example, exploiting a market in the forum State *or* entering a contractual

3   relationship centered there.'" 71 F.4th at 1163 (quoting *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496,

4   503 (9th Cir. 2023) (emphasis added)).   Here, neither of those is even a close question.   As a

5   worldwide phenomenon, there can be no doubt that in launching OnlyFans, FIL "deliberately

6   reached out beyond its home" in the United Kingdom to "exploit[] a market in the forum State" of

7   California (the most populous state in the country, with a GDP greater than that of the entire UK[2]).

8   Indeed, the fact that FIL "deliberately" reached outside the UK to exploit other markets is seen in

9   the very fact of Defendants' second argument, regarding the forum-selection clause in the Terms

10  of Service.   Had FIL intended to exploit only the UK market, there would have been no need for it

11  to include a forum selection clause, let alone one that would permit users to "rely on mandatory

12  rules of the law of the country where you live."  Decl. of Lee Taylor, Ex. C § 16(a).

13          Yet the coup-de-grace on whether Defendants "purposefully availed" themselves of doing

14  business in California is found in *Davis*'s alternative path to satisfying that showing: "or entering

15  a contractual relationship centered there.'"  71 F.4th at 1163 (quoting *Yamashita v. LG Chem, Ltd.*,

16  62 F.4th 496, 503 (9th Cir. 2023)).   Here, the contractual relationships between FIL and Plaintiffs

17  and members of the class are clearly "centered" in California.  Defendants submit John Doe 1 and

18  John Doe 2's complete transaction histories with their motion.  *See* Taylor Decl. Exs. F, G.  Those

19  documents helpfully include a column titled "IP City," which shows, for example, that John Doe 1

20  registered for OnlyFans on March 3, 2020, from San Jose, California.  *Id.* Ex. F at 2.  That column

21  further shows that all but a handful of John Doe 1's hundreds of individual transactions with FIL

22  (and Fenix, respecting the financial transactions) were performed through "IP Cit[ies]" in

23  California.  *Id.* at 2-8.  Likewise, John Doe 2 entered his contractual relationship with FIL on May

24  31, 2019, and the great majority of his transactions were likewise performed from an "IP City" in

25  California.  Taylor Decl. Ex. G at 2-51.  Indeed, (other than sporadic transactions in other states)

26

27  [2] *See* https://en.wikipedia.org/wiki/California#Economy (reporting California's "gross state product" at $4.0 trillion in 2024);

28  https://en.wikipedia.org/wiki/Economy_of_the_United_Kingdom (reporting the UK's GDP at $3.495 trillion in 2024).

1   there is no evidence that any aspect of the "contractual relationship" between Defendants and

2   Plaintiffs was entered into and performed anywhere *but* California.

3        With respect to internet-based businesses, *Starlight International, Ltd. v. Lifeguard Health,*

4   *LLC*, and the cases it relies on provide an analogous roadmap.  No. 08-cv-1894-RS, 2008 WL

5   2899903 (N.D. Cal. July 22, 2008).  There, the court found purposeful availment where an internet

6   business "made $2,559 of sales to California customers via its website over thirteen months."  *Id.*

7   at *6.  The court rejected the notion that an online company must "'target' California consumers in

8   particular" to avail itself of the privilege of conducting business in California.  It noted that when

9   it comes to internet-based companies, the Ninth Circuit has relied on the "sliding scale" approach

10  applied in other cases, under which "'[a]t one end of the spectrum [when specific jurisdiction is

11  proper] are situations where a defendant clearly does business over the Internet [while at] the

12  opposite end [when specific jurisdiction is improper] are situations where a defendant has simply

13  posted information on an Internet Web site which is accessible to users in foreign jurisdictions.'"

14  *Id.* at *5 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) and quoting *Zippo*

15  *Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997) (alterations by

16  *Starlight*)).  The *Starlight* court then cited *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D.

17  Cal. 1999), distilling the principle that where a defendant's "website was not passive, but

18  interactive, had generated actual sales to California consumers, [it had] therefore established

19  sufficient minimum contacts to invoke personal jurisdiction in California."  *Id.* at *5; *see also*

20  *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (recognizing the continuing validity of

21  the sliding-scale approach).

22       Notably, Defendants' contacts with California and its residents are far more extensive in

23  this case than they were in *Starlight International* and *Stomp, Inc*.  Jurisdiction was established in

24  those cases through the website-defendants making one-off sales to California residents, without

25  anything resembling the continuous and detailed contractual relationship that is established when a

26  California resident joins OnlyFans.  *See* Taylor Decl. Ex. C (27-page contract detailing the

27  relationship).  Even then, the contracts here did not just commemorate a single, momentary

28  transaction—John Doe 1's relationship with Defendants has endured for over four years and is

6

evidently ongoing, *id.* Ex. F at 2, 8; while John Doe 2's relationship with Defendants spanned fifty pages of separate transactions, over just shy of four years.  *Id.* Ex. G 2, 51.  And as Mr. Taylor explains, the contract itself went through multiple reaffirmations over the term of the relationship between Plaintiffs and Defendants.  Taylor Decl. ¶¶ 15-19 (describing updates).

    **B.**   **The *Muto* Opinion's Three-Sentence Analysis of Personal Jurisdiction Should Not Be Persuasive.**

Continuing to hinge their argument strictly on a "purposeful direction" analysis, Defendants hang their hat on *Muto*.  Mem. at 7.  In fact, Defendants are able to block-quote the *entirety* of *Muto*'s analysis, which spans just three sentences.  *Id.* (quoting 2024 WL 2148734, at *4).  Even then, the *Muto* court made the same error that Defendants make in this motion (and that they had invited in *Muto*):   While *Muto*'s "Legal Standard" section duly noted that jurisdiction can be established either by "purposeful direction" *or* "purposeful availment," *id.* at *4, its "Discussion" section *exclusively* considered whether Defendants had purposefully directed their activities at California.  *Id.*  Accordingly, quoting *Herbal Brands*, it reasoned that when evaluating jurisdiction, "the court must consider whether the defendant's generally accessible website had some 'forum-specific focus,' or if the defendant 'exhibited an intent to cultivate an audience in the forum.'" *Id.* (quoting 72 F.4th at 1091-92).  But since the challenged conduct in *Herbal Brands* consisted solely of intentional torts, the resulting opinion was explicit in evaluating jurisdiction solely under the "purposeful direction" test.  72 F.4th at 1091 ("Because each of [plaintiff's] claims requires an intentional tortious or 'tort-like' act, we employ the purposeful direction test.").  Evidently reasoning that *Herbal Brands* set forth the exclusive analysis to follow when it comes to internet-based business, the *Muto* court wrongly concluded that "Plaintiffs' assertions that a significant number of California residents visited and purchased subscriptions through Defendants' website are not enough to carry their burden in *this* inquiry."  2024 WL 2148734, at *4 (emphasis added).

An opinion from one district court judge is of course not binding on another.  *Camreta v. Greene*, 563 U.S. 692, n.7 (2011).  And while there may be independent value in consistency among district court rulings within a circuit, that value disappears if the first ruling is wrong, or the result of an erroneous or incomplete analysis.  Plaintiffs respectfully suggest that that is the case here, and

7

that this Court should independently evaluate whether Defendants purposefully availed themselves of doing business in California with subscribers to OnlyFans, and thus satisfy the most fundamental jurisdictional inquiry, that they "should reasonably anticipate being haled into court []here." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## II.   THE FORUM SELECTION CLAUSE IS UNENFORCEABLE BECAUSE IT WOULD CONTRAVENE TWO STRONG CALIFORNIA POLICIES.

"[A] forum selection clause is unenforceable 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute *or by judicial decision*.'" *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)).  In other words, "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." *America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 90 Cal. App. 4th 1, 12 (2001).  In contrast to its abbreviated jurisdictional analysis, the *Muto* court undertook an extensive analysis of the forum selection clause, and correctly concluded that "Defendants' forum selection clause is void as contrary to California public policy." *Muto*, 2024 WL 2148734, at \*2-4.[3]

In *AOL*, plaintiffs brought a class action alleging various violations of California consumer protection law.  552 F.3d at 1078.  Defendant moved to dismiss for improper venue, relying on a forum selection clause requiring any action to be brought in Virginia.  *Id.* at 1079-80.  The district court granted the motion, but the Ninth Circuit reversed, because Virginia would not permit the claims to proceed on a class basis.  It held that "[a]s to such California resident plaintiffs, *Mendoza* holds California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law." *Id.* at 1084. As previewed above, *Mendoza* noted that "[t]he unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the TOS forum selection clause."  90 Cal. App. 4th at 712.

---

[3] It is of course not unusual for people (or courts) to be correct about one issue but wrong about another, which explains why district courts are often affirmed in part and reversed in part.  Even then, it is perhaps more accurate to describe the *Muto* court's jurisdictional analysis as "incomplete" rather than "wrong."  *See supra* at 7.

8

Beyond the class aspect, just as the substantive law at issue in *Doe/Mendoza* (the CLRA) embodied a strong public policy sufficient to deny dismissal, the substantive law at issue here (the ARL) does the same.  The only two courts to have considered whether the ARL is a fundamental policy of California have concluded that it is.  *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) ( "the ARL reflects a *fundamental* policy of California.") (emphasis in original); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019) ("the Renewal Law nonetheless represents a fundamental public policy").

Curiously, although Defendants are well aware of the "fundamental public policy" obstacle from the briefing on this issue in *Muto*, they offer only *one* sentence of argument to contend that litigating in the UK would be equivalent.  Mem. at 8 *l.* 25-28.  That sentence points to the declaration of an English barrister who opines that Plaintiffs would "have numerous 'procedural routes' to pursue a 'collective' action there, including a 'so called 'top down' award.'"  *Id.*  Plaintiffs respond to that point in Parts II.B and C below, and respectfully suggest that Defendants should not be permitted to use their reply brief to make *new* arguments beyond the one-sentence assertion that made in their opening brief.  But first, Plaintiffs respond to Defendants' argument concerning the *only* substantive authority they invoke in this section, *Losson v. Union Des Associations Europeennes De Football*, 2024 WL 3406987 (N.D. Cal. July 11, 2024).  *See* Mem. at 10.

**A. *Losson* Is Inapposite Because the Plaintiff There Did Not Contend that Enforcing the Forum Selection Clause Would Contravene a Strong Public Policy.**

As Defendants correctly recite, forum selection clauses are to be enforced unless the plaintiff establishes one of three things:  that "'(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum . . . or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court.'"  Mem. at 8 (quoting *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020)).  Defendants' reliance on the recent *Losson* opinion is entirely inapposite to *Muto*'s correct analysis and Plaintiffs' arguments here, because as Judge Corley noted in *Losson*, the plaintiff there did not "argue contravention of a strong public policy," but instead argued only the third route, that he would be "denied [his] day in court because

9

he would have no remedy under the laws of Switzerland." 2024 WL 3406987, at *3.

Even accepting Judge Corley's conclusion that the absence of a class action procedure in a foreign forum is insufficient under the *third* route for overcoming enforcement of a forum selection clause, that (unpublished) opinion plainly cannot overcome the precedential holdings in *Doe* and *Mendoza* that the consumer class action mechanism evinces a "strong public policy" of California that is sufficient to forestall dismissal under the *second* route.

**B. Litigation in England or Wales Would Foreclose a Class Action.**

Defendants' brief argument that California's strong public policy in favor of consumer class actions would be protected if this case were sent to England or Wales is meritless, just as *Muto* explained. 2024 WL 2148734, at *4. First, Defendants do not claim that U.S.-style class actions are available in England or Wales, because they are not. The closest alternatives are described in the White declaration, where Mr. White asserts that "[i]n English law there are various procedures analogous to a class action which the Plaintiffs could seek to deploy." White Decl. ¶ 50. But as the *Muto* court found, the "procedures" he describes are not at all like a class action under Rule 23. 2024 WL 2148734, at *4. He first references the possibility of "a Group Litigation Order under CPR 19.11." *Id.* This is a non-starter, because as the England Supreme Court case that Mr. White references explains, "the group action procedure suffers from the drawback that it is an 'opt-in' regime: in other words, claimants must take active steps to join the group." *See* Plaintiffs' Request for Judicial Notice ("RJN") Ex. A ¶ 25 (*Lloyd v. Google*, [2021] UKSC 50). *Lloyd* describes various limitations of the group action procedure, including that "a solicitor conducting the litigation has to obtain sufficient information from a potential claimant to determine whether he or she is eligible," he or she must "enter into a retainer with [each] client," and "the initial costs alone may easily exceed the potential value of the claim." *Id.* *Lloyd* then explains how this device has been unavailing where "the number of people affected is large and the value of each individual claim relatively small," rendering the procedure "impractical in [such] cases." *Id.* ¶¶ 26-28.

Again citing *Lloyd*, Mr. White proposes the possibility of "a representative action under CPR 19.6, seeking declaratory relief to be followed by individual claims for compensation." White Decl. ¶ 50. But *Lloyd* explains why that approach is infeasible for these claims: "For claims which

10

individually are only worth a few hundred pounds, this process is not economic as the initial costs alone may easily exceed the potential value of the claim."[4]  RJN Ex. A ¶25.  Most importantly, a "representative action" under English law would impermissibly strip absent class members of their constitutional right to due process, because as *Lloyd* explains "[t]he rule does not confer a right to opt out of the proceedings."  RJN Ex. A ¶77.  Both California courts and the Supreme Court recognize that the lack of an opt-out right "violate[s] due process."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011); *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 826 (2014).

### C.  There is No Analogue to the ARL in English Law.

Even if England provided for a class device remotely similar to Rule 23(b)(3), England has no analogue to the substantive provisions of the ARL.  Mr. White opines that "English law provides for at least three corresponding causes of action," *id.* ¶ 34, but even superficial scrutiny shows that his three alternatives are nothing of the sort.  First, he says the "Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013" "contains a set of pre-and post-contractual disclosure and notification protections comparable to (if not more stringent than) the California Automatic Renewal Law."  *Id.* ¶ 34a.  He says that under "Regulation 13(1)" of that law, a "trader" is required to disclose the information set forth in "Schedule 2" "before a consumer is bound by a distance contract."  *Id.* ¶ 34.  Plaintiffs submit herewith the full text of that statute, which contains nothing remotely similar to the ARL.  RJN Ex. B.  Schedule 2 sets forth 24 different requirements, but the only one that concerns a "subscription" service says only that the "trader" must state "the total costs per billing period."  *Id.* at 23 (sub. (h)).  That has nothing to do with Plaintiffs' claims here.  Moreover, as Mr. White forthrightly explains, Plaintiffs' only relief under this "corresponding causes of action" would be for "breach of contract."  White Decl. ¶ 42.  That is unhelpful, because Plaintiffs are not making a breach of contract claim.

Mr. White's second and third "corresponding causes of action" are also non-responsive to Plaintiffs' claim.  His second idea refers to a law in England "similar to the California Unfair

---

[4] We note that Plaintiffs' and the class members' claims are not "for a few hundred pounds."  Subscriptions range from $4.99 to $49.99 per month, Compl. ¶ 2, so even if a given class member were unlawfully charged for multiple months before noticing and canceling, it would be a rare class member whose entitlement to restitution reaches even $100.00.

11

Competition Law." White Decl. ¶ 34b.  But Plaintiffs are not seeking to enforce the UCL in the abstract, but to enforce the ARL itself.  His third reference is to the "Consumer Rights Act 2015," but by Mr. White's own description, the "most relevant provisions" of that statute require only that "digital content will match any description of it given by the trader to the consumer," and that any information the trader provides "is to be treated as included as a term of the contract."  *Id.* ¶ 44.  Like the others, those provisions simply have no bearing on Plaintiffs' claims.

Finally, regarding the substitutability of English law, it should be noted that both *King* and *Kissel* held that even other *states'* "corresponding causes of action," White Decl. ¶ 34, were insufficiently protective of the fundamental ARL rights of California consumers.  *King*, 393 F. Supp. 3d at 868-69; *Kissel*, 2016 WL 7647691, at \*4.

### D.  Defendants Identify no English Analog to California's "Public Injunction."

"The public injunction is a creature of California law that 'has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.'"  *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020) (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017).  Public injunction under California law sharply contrasts with common law injunctive relief in that the requesting plaintiff need not "demonstrate any type of likely future injury."  *Id.*  A public injunction under California law "is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff," such that it will still appropriately issue where "the plaintiff has already been injured, allegedly, by such practices and is aware of them."  *McGill*, 2 Cal. 5th at 955 (citation omitted, alteration accepted).  California's Supreme Court has made it very clear that "a provision in *any* contract … that purports to waive … the statutory right to seek public injunctive relief under the UCL … is invalid and unenforceable."  *McGill*, 2 Cal. 5th at 962.

Mr. White's declaration devotes several paragraphs to the issue of public injunctive relief, but nowhere addresses the key issue of whether English courts will issue injunctions where the plaintiff himself cannot show a likelihood that *he* will again be injured.  White Decl. ¶¶ 52-59.  The only English authority he cites suggests that they would not.  According to that precedent, "an injunction may only be granted to protect a legal or equitable right [which] signifies the need to identify an interest of *the claimant* which merits protection."  RJN Ex. C (*Convoy Collateral Ltd v*

12

*Broad Ideas International* [2023] AC 389, ¶52) (emphasis added).  There is no indication either in that lengthy opinion or in Mr. White's declaration that English courts are willing to issue injunctions at the behest of a fully compensated claimant who desires to prevent the respondent from causing similar injuries "to the general public," as California uniquely permits.  *McGill*, 2 Cal. 5th at 955.

## III.   PLAINTIFFS' ALLEGATIONS ESTABLISH THEIR STANDING UNDER BOTH ARTICLE III AND THE UCL.

The Court can give short shrift to Defendants' challenge to Plaintiffs' standing.  Mem. at 10-11.  Here again, Defendants rely on the wrong precedent.  They say that "Plaintiffs must show 'actual reliance'" for UCL standing, Mem. at 18, but the case they cite deals with "false advertising and misrepresentations."  *Moore v. Mars Petcare US*, Inc., 966 F.3d 1007, 1020 (9th Cir. 2020).  However, "[u]nder the UCL's unlawful prong, a plaintiff must show actual reliance only if the unlawful conduct is based on fraud or misrepresentation[.]"  *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 953 (C.D. Cal. 2014).  Plaintiffs' claim is based only on Defendants' unlawful violations of the ARL, not fraud or misrepresentation.

Defendants point out that both Article III and UCL standing require a plaintiff to show that their economic injury was caused by, or the result of, the challenged conduct.  Mem. at 10.  Here, Plaintiffs properly allege that if they had received all of the pre-subscription disclosures required by the ARL, the post-subscription acknowledgment, and a ready means of cancelation, they "would not have lost to Defendants the money associated with those auto-fees."  Compl. ¶ 34 (John Doe 1); *see also* ¶ 35 (John Doe 2).  Those allegations must be accepted as true, and construed "in the light most favorable to Plaintiff as the non-moving party."  *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (citation omitted).

Independently, Plaintiffs have standing because products that are provided to a consumer in derogation of the ARL's various disclosure requirements are deemed "unconditional gifts."  Compl. ¶ 55 (citing Cal. Bus. & Prof. Code § 17603).  As the court in *Lopez v. Stages of Beauty, LLC* explained:  "In other words, when a product is delivered to a consumer in violation of the ARL, it is not considered a product that has been sold, but is considered a gift.  Thus, when the Defendant collected money for that gift, it injured Plaintiff."  307 F. Supp. 3d 1058, 1070 (S.D.

Cal. 2018) (citing *Roz v. Nestle Waters N. Am., Inc.*, 2017 WL 132853, at *7-8 (C.D. Cal. Jan. 11, 2017)).  The Ninth Circuit (albeit in an unpublished opinion) has adopted the same reasoning, that renewal charges to a consumer's card while the merchant is in derogation of the ARL suffices for both Article III and UCL standing.  *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018).

Defendants nevertheless contend that because Plaintiffs' transaction histories show that they had previously subscribed to and then canceled their membership to certain "creators," they "knew" that clicking on a creator would create a subscription that "would renew if not canceled." Mem. at 11.  That argument is unavailing for two reasons.  First, it completely disregards the manner of standing described in *Lopez* and *Johnson*—that billing a consumer a renewal fee while in derogation of the ARL's requirements is *itself* a cognizable injury caused by the business's non-compliance. 307 F. Supp. 3d at 1070.  Second, Defendants' argument is just an *inference* that they draw from Plaintiffs' past activity.  One can just as easily infer that Plaintiffs canceled prior subscriptions because they didn't care for the creator's content, the creator's content did not match the profile description, the creator had extremely little content, the creator made off-putting comments, or any number of other reasons.  In any event, courts are to "construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).  So the inference that *Defendants* draw from Plaintiffs' transaction histories is not controlling (or even relevant).

Moreover, even if one accepted Defendants' inference, it does not prove that Plaintiffs' loss of money was not "a result of," Defendants' failure to comply with the ARL's several provisions. Cal. Bus. & Prof. Code § 17204.  A UCL defendant's unlawful conduct "does not have to be the only cause of the harm." *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1093 (N.D. Cal. 2019) (citation omitted).  Instead, it need only be a "substantial factor" in causing the plaintiff's loss of money, and thus "a contributing cause may satisfy standing." *Id.* at 1092.  Even *assuming* that Plaintiffs had at one point recognized Defendants' auto-billing practices prior to being charged an auto-renewal fee, (1) receiving clear and conspicuous disclosures at the time of the transaction, (2) clicking to affirm a user's consent to auto-billing, (3) receiving a confirming

1   email sent afterward, and (4) seeing a prominently located cancellation button on the website (all

2   of which are required by the ARL, but none of which are done by Defendants) all serve the

3   additional purpose of *reminding* a user that their subscription will renew if not timely canceled.

4   Discovery will show whether Defendants' inference is valid in the first place, but even if it is,

5   discovery would likely also show whether Defendants' serial violations of the ARL were

6   nevertheless "a contributing cause" of Plaintiffs' failure to cancel prior to being auto-billed. *Id.*

7   **IV.    PLAINTIFFS HAVE STATED A CLAIM AGAINST FENIX INTERNET.**

8           Defendants' final argument is that Plaintiffs' claim against Fenix Internet should be

9   dismissed because "Fenix Internet does not own or operate OnlyFans, and is not responsible for the

10  representations or disclosures that do or do not appear on the platform."  Mem. at 12.  But under

11  the ARL "[i]t is unlawful for any business" to, *inter alia*, "[c]harge the consumer's credit or debit

12  card … for an automatic renewal" where the substantive requirements of the ARL have not been

13  complied with.  Cal. Bus. & Prof. Code § 17602(a)(2).  Here, Defendants openly admit that Fenix

14  Internet's role is to "collect[] payments made by Fans from third-party processors and then

15  distribut[e] the money it collects."  Mem. at 7 n.5.  In other words, Fenix Internet is the entity that

16  unlawfully "[c]harge[s] the consumer's credit or debit card … for an automatic renewal," Cal. Bus.

17  & Prof. Code § 17602(a)(2), after the consumer (here, Plaintiffs and the class) have failed to receive

18  the disclosures, confirmations, and ready means of cancelation mandated by the ARL.  Since Fenix

19  Internet is the business that makes the charges, it has engaged in "unlawful" conduct under section

20  17602(a)(2) of the ARL, just as its parent entity FIL has engaged in "unlawful" conduct by failing

21  to meet the ARL's substantive requirements.

22                                    **CONCLUSION**

23          For all of the foregoing reasons, Defendants' motion should be denied.

24  Dated:  August 22, 2024                      GAW | POE LLP

25

26                                         By:   s/ *Mark Poe*
                                                 _____
27                                               Mark Poe
                                                 Attorneys for Plaintiffs
28