Jacob M. Heath (SBN 238959)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401
jheath@orrick.com

Jonathan A. Direnfeld (*pro hac vice*)
Amisha R. Patel (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: +1 202 339 8400
Facsimile: +1 202 339 8500
jdirenfeld@orrick.com
apatel@orrick.com

Attorneys for Defendants FENIX INTERNATIONAL LIMITED and FENIX INTERNET LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED and FENIX INTERNET LLC,<br><br>Defendants. | Case No. 3:24-cv-03713<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Judge: Hon. Charles R, Breyer<br>Date: September 20, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6 -17th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. LEGAL ARGUMENT .......................................................................................................... 2

    A. For the Reasons Articulated in Judge Sykes's Decision, Plaintiffs' Complaint Should Be Dismissed For Lack of Personal Jurisdiction ...................... 2

    B. Plaintiffs' Claims Should Be Dismissed For Forum Non Conveniens .................. 5

        1. Enforcement of the forum-selection clause would not violate any public policy against class action waivers ..................................................... 5

        2. Enforcement of the forum-selection clause would not require waiver of any unwaivable statutory right ...................................................... 7

        3. Enforcement of the forum-selection clause would not prevent Plaintiffs from obtaining public injunctive relief ...................................... 7

    C. Plaintiffs' Complaint Must Be Dismissed For Lack Of Standing .......................... 8

        1. The unconditional gift provision of the UCL does not confer standing ...................................................................................................... 8

        2. Plaintiffs' subscription histories preclude their ability to satisfy the causation requirement .......................................................................... 9

    D. Plaintiffs' Claims Against Fenix Internet Must Be Dismissed For Failure To State A Claim ................................................................................................... 10

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ................................................................................................ 4

*America Online, Inc. v. Superior Court of Alameda County (Mendoza)*,
  90 Cal. App. 4th 1 (2001) .................................................................................................. 5, 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .......................................................................................................... 2-3

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) ................................................................................................... 7

*Carrera v. First Am. Home Buyers Prot. Co.*,
  2012 WL 13012698 (C.D. Cal. Jan. 24, 2012) ..................................................................... 1

*Clifford v. Quest Software Inc.*,
  38 Cal. App. 5th 745, 755 (2019) ..................................................................................... 7-8

*Compound Sols., Inc. v. CoreFX Ingredients, LLC*,
  2020 WL 3639663 (S.D. Cal. 2020) ................................................................................. 5, 7

*Davis v. Cranfield Aerospace Sols., Ltd.*,
  71 F.4th 1154 (9th Cir. 2023) ........................................................................................... 2, 3

*Debono v. Cerebral Inc.*,
  2023 WL 300141 (N.D. Cal. Jan. 18, 2023) .................................................................... 2, 3

*DiCarlo v. MoneyLion, Inc.*,
  988 F.3d 1148 (9th Cir. 2021) .............................................................................................. 8

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) .......................................................................................... 5, 6

*Gerlinger v. Amazon.com Inc.*,
  526 F.3d 1253 (9th Cir. 2008) ............................................................................................ 10

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
  972 F.3d 1101 (9th Cir. 2020) ........................................................................................... 2, 3

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023) ........................................................................................... 2, 4

*Johnson v. Pluralsight, LLC*,
  728 F. App'x 674 (9th Cir. 2018) ......................................................................................... 9

*Johnson v. Siemens Indus., Inc.*,
  2023 WL 4686015 (N.D. Cal. July 21, 2023) .......................................................................... 1

*King v. Bumble Trading, Inc.*,
  393 F. Supp. 3d 856 (N.D. Cal. 2019) .................................................................................... 7

*Kissel v. Code 42 Software, Inc.*,
  2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ........................................................................ 7

*Lopez v. Stages of Beauty, LLC*,
  307 F. Supp. 3d 1058 (S.D. Cal. 2018) .................................................................................. 9

*Losson v. Union des Ass'ns Europeennes de Football*,
  2024 WL 3406987 (N.D. Cal. July 11, 2024) ........................................................................ 6

*Mayron v. Google LLC*,
  54 Cal. App. 5th 566 (2020) .................................................................................................. 9

*Miller v. Hearst Commc'ns, Inc.*,
  2012 WL 3205241 (C.D. Cal. 2012) ...................................................................................... 5

*Muto v. Fenix Int'l Ltd.*,
  2024 WL 2148734 (C.D. Cal. May 2, 2024) ...................................................................... 4-5

*Price v. Facebook, Inc.*,
  2020 WL 6573279 (N.D. Cal. 2020) ...................................................................................... 5

*Roz v. Nestle Waters N. Am., Inc.*,
  2017 WL 132853 (C.D. Cal. Jan. 11, 2017) .......................................................................... 9

*Schell v. Volkswagen AG*,
  2022 WL 187841 (9th Cir. Jan. 20, 2022) ........................................................................... 10

*Starlight International, Ltd. v. Lifeguard Health, LLC*,
  2008 WL 2899903 (N.D. Cal. July 22, 2008) ........................................................................ 4

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
  187 Cal. App. 4th 634 (2010) ............................................................................................ 5, 6

*Zeller v. Optavia, LLC*,
  2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ...................................................................... 9

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................................... 9

Cal. Bus. & Prof. Code § 17602 ................................................................................................. 10

## I.  INTRODUCTION

This case should be dismissed for the same reason Judge Sykes dismissed, with prejudice, the identical prior class action brought by the same Plaintiffs' counsel in the Central District of California: this Court lacks personal jurisdiction over Defendants.  Plaintiffs' counsel does not dispute that rather than seeking reconsideration or appealing Judge Sykes's decision, he made the tactical decision to file this copycat action in this Court with a named plaintiff from the *same district* where the previous complaint was dismissed.[1]  Plaintiffs' counsel attempts to "defend" this blatant forum shopping by making the remarkable assertion that, not only is there no limit to his ability to bring serial lawsuits against Defendants in other judicial districts in California, but that the well-reasoned decision by U.S. District Judge in this Circuit rejecting the sufficiency of *the exact same allegations* is not "persuasive authority" because Plaintiffs' counsel disagreed with the outcome. Opp. at 2-3.  Plaintiffs' counsel's hollow attempts to justify these tactics are wholly unconvincing.[2]  Ultimately, Plaintiffs are correct that "[i]f the first judgment against a theory is correct, then the same fate will befall the second case."  Opp. at 2.  This Court should find that the same fate—*dismissal*—befalls this second case because, at every turn, Plaintiffs' Opposition flouts well-established law and flies in the face of basic notions of judicial economy and fairness.

---

[1] Plaintiffs' counsel falsely contends that the plaintiffs are "residents of *this* district." Opp. at 2 (emphasis in original).  The Complaint states plainly that "Plaintiff John Doe 2 is a resident of Riverside County, California." Compl. ¶ 5.  Riverside County is located in the Central District of California, where Plaintiffs' counsel first brought the *Muto* action.

[2] Plaintiffs in this case are no different than those cited in footnote 1 of Defendants' Motion to Dismiss.  Plaintiffs' counsel in those cases forum shopped for a different audience after an "unfavorable" ruling. Opp. at 2.  Critically, cases in this Circuit abound where courts have reasonably inferred forum shopping by Plaintiffs' counsel who files the same claims on behalf of the same putative class with a different named plaintiff *after* the first-filed action received the "unfavorable" ruling of dismissal. *See Johnson v. Siemens Indus., Inc.*, 2023 WL 4686015, at *3 (N.D. Cal. July 21, 2023) (finding a "strong appearance of forum-shopping" where "[a]lthough the named plaintiff is different, the same counsel is endeavoring to bring the same claims on behalf of the same class."); *Carrera v. First Am. Home Buyers Prot. Co.*, 2012 WL 13012698, at *6 (C.D. Cal. Jan. 24, 2012) ("One could reasonably infer forum shopping here, where Plaintiff is represented by the same counsel who filed the *Diaz* case and, after receiving two unfavorable rulings in the Southern District dismissing various claims, filed the instant case six months later.").  The same is true here.  Plaintiffs' counsel admits as much by asking this Court to toll the limitations period in this action "to four years prior to the filing of the *Muto* action—October 24, 2018." Compl. ¶ 41.

## II. LEGAL ARGUMENT

### A. For the Reasons Articulated in Judge Sykes's Decision, Plaintiffs' Complaint Should Be Dismissed For Lack of Personal Jurisdiction.

Plaintiffs do not dispute that this Court lacks general jurisdiction over both FIL and Fenix Internet. With respect to specific jurisdiction, Plaintiffs argue that "Defendants "purposefully availed themselves of doing business in California." Opp. at 7-8. In doing so, Plaintiffs contend that Defendants' arguments and Judge Sykes's decision in *Muto* concerning the specific jurisdiction test articulated in *Davis/Schwarzenegger* miss the mark because they do not address Plaintiffs' claims regarding "purposeful availment." Not true. Judge Sykes specifically addressed—and rejected—the exact same purposeful availment arguments Plaintiffs raise in their opposition. For the same reasons, Plaintiffs' arguments fail as a matter of law.

Plaintiffs are correct that the Ninth Circuit stated in *Davis* that it does not impose a "rigid dividing line" between cases involving intentional torts (applying the "purposeful direction" test) versus those sounding in contract (applying the "purposeful availment" test). Opp. at 4; *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (citing *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). *See id. Davis*, 71 F.4th at 1162 ("While our precedent mentions what 'typically' happens, we have never held that this line is a hard-and-fast rule."). However, as the Ninth Circuit subsequently explained in *Herbal Brands*, the "distinction between 'purposeful direction' and 'purposeful availment' is quite narrow," and "similar principles underlie both tests," so courts routinely cite cases applying the two standards interchangeably. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 n.6 (9th Cir. 2023) (collecting cases).

At the outset, Plaintiffs ask this Court to take at face value that Defendants "deliberately reached out beyond [their] home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." Opp. at 5 (quoting *Davis*, 71 F.4th at 1163). But *Davis* notes correctly that "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Davis*, 71 F.4th at 1165 (citation omitted). This is because it is well-settled

1   that "an individual's contract with an out-of-state party alone" cannot subject the individual to the
2   jurisdiction of the other party's home state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478
3   (1985). *Davis* clarified that "purposeful availment" is established by looking at "defendant's 'entire
4   course of dealing' with the forum state—'not solely the particular contract or tortious conduct
5   giving rise to [a plaintiff's] claim.'" *Davis*, 71 F.4th at 1163 (citing *Glob. Commodities*, 972 F.3d
6   at 1108). "Purposeful availment can be established by a contract's negotiations, its terms, its
7   contemplated future consequences, and the parties' actual course of dealing." *Davis*, 71 F.4th at
8   1163 (citing *Burger King*, 471 U.S. at 479).

9   Critically, in assessing each of these factors—contract negotiations, contract terms,
10  contemplated consequences, and actual course of dealings—the court in *Davis* affirmed that
11  plaintiffs' allegations failed to establish that the defendant had sufficient minimum contacts to
12  exercise specific jurisdiction. *Davis*, 71 F.4th at 1163-66. The same rationale applies here: (1)
13  there is no evidence that Defendants sought out Plaintiffs in California or benefited by virtue of
14  Plaintiffs being California residents; (2) "[n]either the contract's negotiations, terms, nor
15  contemplated consequences establish that [Defendants] formed a substantial connection with
16  [California],"*id.* at 1163, indeed the contemplated consequences are governed by an OnlyFans
17  forum selection clause and choice of law provision requiring that all claims be heard in the courts
18  of England and Wales; and (3) the course of dealing between the Parties shows that Defendants are
19  not engaged in activities in the forum state. *See* Decl. of Lee Taylor ISO Defs.' Mot. to Dimiss
20  ("Taylor Decl."), ECF 17-3, ¶ 8 (noting that Defendants do not engage in marketing, sales, or other
21  commercial activity specifically directed at California residents). Plaintiffs continue to point to
22  their own actions to thrust personal jurisdiction on Defendants. But specific jurisdiction is
23  exercised only in circumstances where a defendant has "more limited contacts with the forum
24  state," and covers a "narrower class of claims." *Davis*, 71 F.4th at 1161.

25  Second, Plaintiffs argue that Defendants "purposefully availed themselves of doing
26  business in California … [by] entering a contractual relationship centered there." Opp. at 5 (quoting
27  *Davis*, 71 F.4th at 1163). Here again, however, Plaintiffs premise this argument on their own
28  actions—i.e., that they were located in California when they agreed to the OnlyFans Terms of Use,

1  and that they accessed the OnlyFans website from California.  Plaintiffs further point to the
2  unpublished decision *Starlight International, Ltd. v. Lifeguard Health, LLC*, for the proposition that
3  an internet-based company is subject to specific jurisdiction where the "[defendant]'s [interactive]
4  website…generated actual sales to California." 2008 WL 2899903 at *5 (N.D. Cal. July 22, 2008).
5  But as the Ninth Circuit emphasized in *Herbal Brands*—again directly contrary to Plaintiffs'
6  suggestion here—the fact that a plaintiff visits a website and even initiates a business transaction
7  with it from the forum state is not enough to create personal jurisdiction over the website operator.
8  *Herbal Brands*, 72 F.4th at 1095.  As *Herbal Brands* explained—directly contrary to Plaintiffs'
9  suggestion—only if the defendant itself takes some forum-directed act, like causing a "physical
10 product" to be "delivered to the forum" can it be said to have "purposefully directed its conduct at
11 the forum." *Id.* at 1088.

12 Indeed, *Herbal Brands* went on to illustrate this principle with an example that maps this
13 case directly: if an Arizona resident visits a website to "order[] a product for delivery to a friend in
14 California, [the defendant's] fulfillment of that hypothetical order" would not give rise to personal
15 jurisdiction in Arizona, because only the Arizona resident and not the website operator, took any
16 act there.  *Id.* at 1093 n.5.  Plaintiffs here are in the exact same position.  Just like that Arizona
17 resident, they visited a website and initiated a business transaction.  And just like that Arizona
18 resident, they had no "physical product" that was "delivered to" them as a result.  Accordingly, just
19 like that Arizona resident, their actions do not give rise to personal jurisdiction.

20 Because this case falls outside "narrow" circumstance in which a defendant makes a "sale
21 of a physical product to a consumer in the forum state," but rather involves "other internet activity
22 [that] is allegedly the source of personal jurisdiction," *Herbal Brands* explains that it falls squarely
23 in the template of "cases such as … *AMA* [*Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir.
24 2020)]," *id*. at 1095, which hold that personal jurisdiction may not be exercised simply based on a
25 plaintiff's interactions with a website, see *AMA*, 970 F.3d at 1210-11 (no personal jurisdiction in
26 California over operator of globally accessible website even though 20% of its visitors accessed
27 the website from the state).  For these reasons, Judge Sykes correctly concluded that "Plaintiffs
28 assertions that a significant number of California residents visited and purchased subscriptions

1  through Defendants' website are not enough to carry their burden" to demonstrate that Defendants
2  purposefully availed themselves of doing business in California. *Muto v. Fenix Int'l Ltd.*, 2024 WL
3  2148734, at *4 (C.D. Cal. May 2, 2024). This Court should follow Judge Sykes's well-reasoned
4  rationale in dismissing Plaintiffs' identical allegations.

### B. Plaintiffs' Claims Should Be Dismissed For *Forum Non Conveniens*.

Plaintiffs do not dispute that they agreed to a binding forum-selection clause requiring this suit to be brought in England or Wales. Instead, they insist that clause is unenforceable, because it violates California public policy, since it would: (1) prevent them from enforcing the ARL; (2) foreclose a class action; and (3) deny public injunctive relief. Opp. 8-13. To avoid a forum-selection clause for reasons of public policy, Plaintiffs must show that "enforcement would result in the waiver of an unwaivable right." *Compound Sols., Inc. v. CoreFX Ingredients, LLC*, 2020 WL 3639663, at *5 (S.D. Cal. 2020). Specifically, they must show that the clause, "operat[ing] in tandem" with the choice-of-law provisions, will act "as a prospective waiver" of a right that state law "prohibits ... waiver of." *Miller v. Hearst Commc'ns, Inc.*, 2012 WL 3205241, at *2 (C.D. Cal. 2012). None of Plaintiffs' arguments meet that standard.

### 1. *Enforcement of the forum-selection clause would not violate any public policy against class action waivers*.

Plaintiffs contend that the forum-selection clause here is contrary to public policy, as it would deprive them of their unwaivable *procedural* right to proceed in a "U.S.-style class action[]." Opp. at 10. But no such categorical right exists, see *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 652 (2010) ("[A] class action waiver is not void as against public policy" if it "does not affect an unwaivable *statutory* right.") (emphasis added)), and California courts have enforced forum-selection clauses in putative class actions, see, e.g., *Price v. Facebook, Inc.*, 2020 WL 6573279, at *1 (N.D. Cal. 2020) (enforcing a U.K. forum-selection clause).

Instead, Plaintiffs rely on two cases that involved forum-selection clauses that would *both* "waive [plaintiffs'] rights to a class action" *and* waive unwaivable "statutory remedies provided by the CLRA." *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009); *America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 90 Cal. App. 4th 1, 15 (2001). In other words, *AOL*

and *Mendoza* are exactly the kinds of cases discussed in the prior paragraph—where the "class action waiver" *does* "affect an unwaivable statutory right" (there, under the CLRA), and so is unenforceable for *that* reason. *Diamond Foods,* 187 Cal. App. 4th at 652.[3] *This case, however, is materially different, as enforcement of the forum-selection clause **would not** result in the waiver of any unwaivable statutory right.* See MTD § III.C.1; *infra* II.B.2.  Even if the forum-selection clause would prevent Plaintiffs from proceeding via class action (which, as explained below, it does not), it would still be enforceable under California law.  And though Plaintiffs contend *Losson* is "inapposite" because plaintiff in that action "did not argue contravention of a strong public policy," Opp. at 9, plaintiff in *Losson* argued that "he and the putative class would…be denied of their day in court because he would have no remedy under the laws of Switzerland," which is precisely the type of *procedural* right that can be waived.  *Losson v. Union des Ass'ns Europeennes de Football*, 2024 WL 3406987, at *3 (N.D. Cal. July 11, 2024).  *Losson* rebuts Plaintiffs' argument that litigation pursuant to the forum selection clause in England and Wales would foreclose a class action, Opp. at 10-11, and finds exactly the opposite.

Plaintiffs' argument similarly fails because, as explained by Antony White KC (a highly experienced barrister-at-law in England and Wales since 1983), Plaintiffs *will* have numerous "procedural routes" for pursuing a "collective" action in England and Wales including "a so-called 'top-down' award."  Decl. of Anthony White KC ISO Defs. Mot. to Dismiss ("White Decl."), ECF 17-2, ¶ 50.  While Plaintiffs raise various objections—based on their unqualified reading of English law, and without any supporting declaration—to other forms of collective actions in England, the only one they lodge to the "top-down" approach is that it would "not confer a right to opt out of the proceedings." Opp. at 11.  This is a confusing contention for Plaintiffs to advance, as their argument to this point has been that the right to bring class actions is sacrosanct—yet here they reverse course and insist that it is the right to avoid class actions that is crucial.  Unsurprisingly, Plaintiffs cite no

---

[3] While Plaintiffs cite dicta in *Mendoza* to suggest that the unavailability of class actions is alone violative of California public policy, that statement is just that—dicta— because in *Mendoza* (as in *AOL*) the clause at issue required a waiver of *both* class actions *and* unwaivable statutory rights, meaning that the court had no occasion to consider the effect of a clause that did just the former. 90 Cal. App. 4th at 15. In *Diamond Foods*, by contrast, the court considered only a class action waiver, and concluded that it did not violate California public policy. 187 Cal. App. 4th at 652.

1  case suggesting a plaintiff may avoid a forum-selection clause because other individuals may not be

2  able to-opt out of a collective action in the chosen forum.

### 2. *Enforcement of the forum-selection clause would not require waiver of any unwaivable statutory right*.

Plaintiffs concede that the ARL provides no "private right of action" but is instead enforced through suit "under the Unfair Competition Law." Compl. ¶ 17; *Debono v. Cerebral Inc.*, 2023 WL 300141, at *1 (N.D. Cal. Jan. 18, 2023). Moreover, courts have plainly held that the Unfair Competition Law does not create any "unwaivable right." *Compound Sols., Inc.*, 2020 WL 3639663, at *5. It therefore follows that the ARL, which is incorporated into that statute, also does not create any unwaivable right, and Plaintiffs cite no authority to the contrary. Neither of the cases cited by Plaintiffs even deal with a forum-selection clause, let alone suggest that the ARL creates an unwaivable right that would render one unenforceable. *See Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (concluding, in a conflicts-of-laws analysis that California had a stronger interest in applying the ARL than Minnesota had in applying its analogous law); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868-69 (N.D. Cal. 2019) (similar, as between California and New York law). Said simply, neither case addressed the relevant question here.

As explained *infra*, Plaintiffs would have "at least three corresponding causes of action" to pursue their UCL claim for violations of the ARL under English law. White Decl. ¶ 34.

### 3. *Enforcement of the forum-selection clause would not prevent Plaintiffs from obtaining public injunctive relief*.

Plaintiffs' argument that the forum-selection clause would prevent them from obtaining public injunctive relief, Opp. 12-13, fails for at least two reasons. First, as Defendants explained, because Plaintiffs seek injunctive relief only on behalf of OnlyFans users, and not the public as a whole, their request does not "qualif[y] as 'public injunctive relief.'" *See Capriole v. Uber Techs.*, *Inc.*, 7 F.4th 854, 870-71 (9th Cir. 2021) (request for injunction that would, in practice, benefit only "rideshare drivers" was not for public injunctive relief even though it was formally directed more broadly); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 755 (2019) (request for injunction

1  "securing an employer's compliance with wage and hour laws" is not for public injunctive relief, even though the "public certainly has an interest in" such compliance, because the practical benefits inured primarily to the employer's employees). If Plaintiffs bring their suit in the courts of England and Wales, as they contractually agreed to do, they could obtain relief there with that same effect. Specifically, English law permits a plaintiff to sue for a declaration, which in this case would amount to an order from the English court finding OnlyFans's disclosures to be unlawful—not just for these Plaintiffs, but for all users—and requiring those disclosures to be changed. White Decl. ¶¶ 49-56. Because relief equivalent to "public injunctive relief is available to [Plaintiffs] in" their contractually agreed-upon forum, the forum-selection clause "does not violate" California public policy and "is valid." *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021).

Second, under English law, Plaintiffs can receive relief equivalent to a public injunction—i.e., relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," Opp. 12 (citation omitted). Plaintiffs do not dispute that Mr. White stated under oath that English law enables the "English High Court to grant a declaration that it would be unlawful for the Defendants to continue to offer services to Fans on the OnlyFans website without (for example) providing specified pre-contractual information, and to grant injunctive relief restraining the Defendants from continuing to do so. White Decl. ¶ 56; *see* Opp. 10-11. Mr. White further explained that "the substantive effect of such orders, and their consequential impact on the Defendants' future business practices" are "similar if not identical" to "public injunctive" used in California Courts. White Decl. ¶ 56. Plaintiffs reject Mr. White's understanding of English law (without providing any declaration or expert support to the contrary), suggesting that it makes no sense (to them) why an English court would issue such a declaration. That Plaintiffs disbelieve Mr. White's explanation and interpretation of English law—based, apparently, on their own unlicensed and unqualified take on that law—is no basis for refusing to enforce the forum-selection clause here.

### C. Plaintiffs' Complaint Must Be Dismissed For Lack Of Standing.

#### 1. *The unconditional gift provision of the UCL does not confer standing*.

Plaintiffs claim that California law's unconditional gift provision provides an independent

basis for standing under the UCL. Opp. at 13-14. Their theory is that any automatically renewed subscription provided without obtaining the required consent is considered a gift under Cal. Bus. & Prof. Code § 17603, and as such, they have been injured in the amount they paid for the subscription. Opp. at 13-14. In support of this argument, Plaintiffs cite two cases: (a) *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1070 (S.D. Cal. 2018) (citing *Roz v. Nestle Waters N. Am., Inc.*, 2017 WL 132853, at *7-8 (C.D. Cal. Jan. 11, 2017)); and (b) the unpublished Ninth Circuit opinion in *Johnson v. Pluralsight, LLC*, 728 F. App'x 674- 676-77 (9th Cir. 2018). What Plaintiffs omit from their discussion of these cases, however, is that the California Court of Appeals has since rejected this reading of standing under the UCL. *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 576 (2020) (concluding that the "unconditional gift provision of the automatic renewal law does not confer standing for a section 17200 cause of action"). And at least one federal court has since followed the sound reasoning of that decision in the ARL context. *See Zeller v. Optavia, LLC*, 2022 WL 17858032, at *9 (S.D. Cal. Dec. 22, 2022) ("[T]he ARL's unconditional gift provision does not independently confer standing . . . as 'the consumer's injury must be ... caused by the defendant's failure to provide the required disclosures.'") (quoting *Mayron*, 54 Cal. App. 5th at 576).

### 2. *Plaintiffs' subscription histories preclude their ability to satisfy the causation requirement*.

Plaintiffs suggest that their history of purchasing and "cancel[ing] prior subscriptions" could be due to a number of reasons unrelated to their knowledge of the automatically renewing nature of their OnlyFans subscriptions. Opp. at 14. But the transaction histories themselves show that Plaintiffs not only cancelled multiple subscriptions but subsequently *repurchased* subscriptions to those same Creators—exactly the opposite one would expect if Plaintiffs, in fact, "didn't care for the creator's content, the creator's content did not match the profile description, the creator had extremely little content, [or] the creator made off-putting comments." *Id.* Plaintiff John Doe 1 did this on multiple occasions, with at least four separate Creators (Creator Nos. 1, 2, 3, 4, and 6), and Plaintiff John Doe 2 did the same (Creator Nos. 2, 3, 5, 13). Taylor Decl., ECF 16-3 ¶¶ 30, 36 & Exs. F & G (filed under seal). This is not, as Plaintiffs imply, "inference," but fact that Plaintiffs

1  fully understood the affirmative acts they must take to cancel their subscriptions if they did not
2  wish them to automatically renew.  In light of their transaction histories, Plaintiffs cannot plausibly
3  allege that any losses suffered from allowing certain of their subscriptions to renew were caused
4  by inadequate disclosures on the OnlyFans website.  Contrary to their assertion, Plaintiffs are not
5  entitled to discovery to determine whether they satisfy the threshold requirements of standing, i.e.,
6  causation.  *See Schell v. Volkswagen AG*, 2022 WL 187841, at *1 (9th Cir. Jan. 20, 2022) ("Once
7  Volkswagen disputed the truth of Plaintiffs' factual allegations as to Article III standing, Plaintiffs
8  could 'no longer rest on mere allegations [regarding] the existence of such standing.'") (quoting
9  *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255-56 (9th Cir. 2008)).

### D. Plaintiffs' Claims Against Fenix Internet Must Be Dismissed For Failure To State A Claim.

12  Plaintiffs do not dispute that their claims turn solely on representations that were made (or
13  omitted) on the OnlyFans website.  *E.g.*, Compl. ¶ 52; *see also* Opp. 15.  Nor do they dispute that
14  the only substantive allegation they make as to Fenix Internet specifically is that it "is, or has been,
15  continuously in possession of money wrongfully taken from Plaintiff"—which has nothing to do
16  with representations made (or omitted) on the OnlyFans website, and is not a violation of any law.
17  *See* Compl. ¶ 9; Opp. at 15.  Plaintiffs now argue that because Fenix Internet "collects payments,"
18  it is liable because it is unlawful under the California ARL to "[c]harge the consumer's credit or
19  debit card…for automatic renewal."  Opp. at 15 (quoting Cal. Bus. & Prof. Code § 17602(a)(2)).
20  But Plaintiffs' selective quotation omits the prima facie requirement for liability under the statute.
21  The California ARL applies to a business "*that makes an automatic renewal offer or continuous*
22  *service offer to a consumer.*"  Cal. Bus. & Prof. Code § 17602(a) (emphasis added).  Plaintiffs'
23  singular allegation as to Fenix Internet nowhere alleges that it made any offer or other
24  representation to them.  Importantly, Plaintiffs do not cite any case law in support their reading of
25  the statute because, to Defendants' knowledge, none exists.  Thus, Plaintiffs' claims against Fenix
26  Internet must be dismissed.

### III. CONCLUSION

28  For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

1  Dated: August 29, 2024             Respectfully Submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Jonathan A. Direnfeld*
Jonathan A. Direnfeld (*pro hac vice*)
Amisha R. Patel (*pro hac vice*)
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: +1 202 339 8400
Facsimile: +1 202 339 8500
jdirenfeld@orrick.com
apatel@orrick.com

Jacob M. Heath (SBN 238959)
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401
jheath@orrick.com

*Attorneys for Defendants Fenix International Limited and Fenix Internet LLC*