MARK W. POE (BAR NO. 223714)
mpoe@gawpoe.com
RANDOLPH GAW (BAR NO. 223718)
rgaw@gawpoe.com
VICTOR MENG (BAR NO. 254102)
vmeng@gawpoe.com
FLORA VIGO (BAR NO. 239643)
fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA  94111
Telephone:    415-766-7451

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>FENIX INTERNATIONAL LIMITED,<br><br>            Defendant. | Case No.:  3:24-cv-03713<br><br>**AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. California's Automatic Renewal Law (the "ARL") requires that when a business enrolls a California consumer in a service that automatically renews at the end of an initial enrollment period, the business must disclose the terms of that automatic renewal "in a clear and conspicuous manner" before the initial subscription is consummated, and thereafter send the user an acknowledgment further describing the auto-renewal terms and providing information as to how the user can readily cancel before incurring an auto-renewal charge.

2. Defendant owns and operates the popular sexual content platform "OnlyFans," through which consumers can "subscribe" to the OnlyFans accounts of one or more among thousands of different performers, known as "content creators." Consumer subscriptions are the cornerstone of Defendant's revenue model. Yet in violation of California's ARL, by failing to clearly and conspicuously advise its customers that their initial subscription to a creator will be automatically renewed, OnlyFans tricks its customers into making recurring payments, triggering a charge to the customer's debit or credit card ranging from $4.99 to $49.99 for the following month.

3. Plaintiffs John Doe 1 and John Doe 2 bring this action to obtain injunctive and monetary relief for themselves and all other similarly situated OnlyFans customers in California, who entered an automatic renewal plan without receiving the pre- and post-subscription disclosures that are required by California law.

## PARTIES

4. Plaintiff John Doe 1 is a resident of Contra Costa County, California.

5. Plaintiff John Doe 2 is a resident of Riverside County, California.

6. Plaintiffs John Doe 1 and John Doe 2 seek to proceed anonymously under the Ninth Circuit authority holding that "[i]n this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981)). Due to the adult-oriented content of OnlyFans, John Doe 1 and John Doe 2

would be subject to personal embarrassment should their true names be forever linked to this case. The proceedings in this case are likely to reveal John Doe 1 and John Doe 2's particular sexual interests, which would potentially expose them to ridicule and embarrassment from friends, family, and co-workers. In particular John Doe 2's real name is spelled in a particular manner that makes his true identity readily apparent from any Google search.

7. Allowing John Doe 1 and John Doe 2 to proceed anonymously will work no prejudice to Defendant, because their exact identities are known to Defendant via the usernames through which they accessed OnlyFans. John Doe 1 and John Doe 2 are prepared to make a formal motion for leave to proceed anonymously at any time the Court directs them to do so.

8. Defendant Fenix International Limited ("Fenix") is a business entity incorporated and registered in England and Wales, with its headquarters in London. Fenix is the counterparty to the Terms of Service that customers of OnlyFans.com enter when they become members of the site, and thus does business throughout the United States, including by entering contracts with thousands of residents of California. On information and belief, Fenix is the business entity that receives some or all of the automatic renewal fees that are paid by OnlyFans customers and that are the subject of this complaint.

**JURISDICTION**

9. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(d). Specifically, the class alleged in this complaint consists of at least 10,000 members, the vast majority (if not all) of whom are citizens of California, while Defendant Fenix International Limited is a citizen of England and Wales. With monthly subscription renewal fees ranging from $4.99 to $49.99 per month (with an average of $12), and with the class members' 4-year limitations period having been tolled for an additional approximately 19 months based on a previously filed class action alleging similar claims, the amount in controversy greatly exceeds $5 million.

10. This Court has personal jurisdiction over Fenix because Fenix has purposefully availed itself of conducting business with Plaintiffs and thousands of other California residents by entering contracts of indefinite duration with Plaintiffs and all other members of the proposed

1 | class. On information and belief, the total value of the contracts between Fenix and California
2 | residents exceeds $400 million annually.

11. On information and belief, John Doe 1 and John Doe 2's contracting histories with Fenix are typical of those of their 10,000+ fellow class members. Fenix has filed under seal with the Court what are said to be Plaintiffs' complete transaction histories on OnlyFans. According to a declaration by Fenix's Chief Financial Officer, John Doe 1's contractual relationship with Fenix began on May 31, 2019, and according to his transaction history (Ex. F to the Taylor Declaration) that relationship has persisted for over five years, at least through July 11, 2024. The events in the transaction history are not numbered in serial, but appear to consist of over 300 interactions, at least 68 of which involved John Doe 1 paying money to Fenix for the services Fenix provided under the contract. The transaction history further lists the "IP City" from which the transactions were initiated, indicating that virtually all of John Doe 1's financial interactions with Fenix were initiated in California, with Fenix's corresponding performance of its obligation being provided in California.

12. Similarly for John Doe 2, Fenix's Chief Financial Officer's declaration states that his contractual relationship with Fenix began on March 3, 2020, and according to the transaction history, the contractual relationship endured through March 24, 2023. John Doe 2's transaction history spans 51 pages of very small print. The transactions are not serially numbered, but extrapolating from the 49 interactions on the first page, John Doe 2 engaged in nearly 2,500 interactions over the three-year course of the contractual relationship. Based on a search of the transaction history for the "$" symbol, John Doe 2 engaged in at least 54 transactions that involved paying money to Fenix pursuant to the terms of the contract between them. Also like John Doe 1, the "IP City" field indicates that the overwhelming majority of John Doe 2's transactions with Fenix were initiated from California, with Fenix's resulting services being provided here.

13. Plaintiffs' and the class members' claims specifically arise out of Fenix's forum-related conduct in entering contractual relationships with those 10,000+ California residents. An out-of-state business entity that enters into ten thousand of contracts with residents of California,

from which relationships it derives hundreds of millions of dollars annually can hardly be surprised at being haled into court here, nor contend that it is "unfair" to be held accountable here for that forum-related activity.

**VENUE**

14. Venue is proper in this jurisdiction because Plaintiff John Doe 1 is a resident of Martinez, California in Contra Costa County, and entered into the transactions at issue in this case in Contra Costa County.

**APPLICABLE LAW**

15. In 2009, the California Legislature passed Senate Bill 340, which took effect on December l, 2010 as Business & Professions Code section 17600 *et seq.*, commonly known as the Automatic Renewal Law or "ARL." The ARL was passed because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

16. The Assembly Committee on the Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

17. The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

   a. Fail to present the automatic renewal offer terms in a clear and conspicuous

- 4 -

manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card as part of the automatic renewal plan or arrangement, (4) the length of the automatic renewal term or that the service is continuous; and (5) the minimum purchase obligation, if any.

      b. Charge the consumer's credit or debit card for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

      c. Fail to provide an acknowledgment that includes the automatic renewal terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. Section 17602(c) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation, and that mechanism must be described in the acknowledgement.

18. If a business provides any goods, wares, merchandise, or products to a consumer under a purported automatic renewal or continuous service arrangement without first obtaining the consumer's affirmative consent to an agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to be an unconditional gift to the consumer, who may use or dispose of them without any obligation whatsoever. While the ARL does not include a private right of action, a violation

gives rise to restitution and injunctive relief under the Unfair Competition Law.

19. Plaintiffs' separate request for public injunctive relief is not sought for the Class but rather on behalf of the general public of California, i.e., consumers in California who have yet to transact with Fenix but are at risk of doing so in the future. The OnlyFans Platform continues to generate new customers on an ongoing and continuing basis and therefore, as time passes new members of the general public are at risk of new harms and injuries from the legal violations complained of herein, unless those practice are enjoined and corrected so that they fully comply with the ARL, UCL, and other applicable law. Plaintiffs bring this action on behalf of such persons in their individual capacities and class certification is not necessary for this type of public injunctive relief. This action and the relief sought for the general public will provide a public benefit.

## FACTUAL ALLEGATIONS

20. Every subscription to a creator's content on OnlyFans has violated and continues to violate the ARL in numerous ways, but primarily by:

> (1) failing to "present the automatic renewal offer terms . . . in a clear and conspicuous manner" before payment is made, in violation of section 17602(a)(1);
>
> (2) charging the consumer's credit or debit card "without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms" in violation of section 17602(a)(2); and
>
> (3) failing to "provide an acknowledgment that includes the automatic renewal offer terms . . . cancellation policy, and information regarding how to cancel" in violation of section 17602(a)(3).

21. The foregoing violations are all made obvious through an illustration of an exemplary enrollment to the OnlyFans account of the popular Kardashian-adjacent celebrity and OnlyFans content creator known as "Blac Chyna," who was reported to have been the top-earning creator on OnlyFans for 2021, generating revenue for Fenix of $20 million per month prior to terminating her account.

22. A user joins OnlyFans by navigating to OnlyFans.com and clicking a hyperlink

- 6 -

titled "Sign up for OnlyFans." The user then creates an account by choosing a user name, and inputting their email address and choosing a password. After receiving an email at that address to "verify your email address," the user is taken to a "Home" screen with a menu on the left, a middle section with a selection of "posts" made by users and creators, a search tool for finding creators, and a list of "suggestions" on the right, highlighting certain content creators whose profiles the user can scroll through.

23. When a user searched for and then navigated to the profile page for Blac Chyna, for example, they are presented with the following screen:



24. Upon clicking the "SUBSCRIBE" button, the user is advised of certain "benefits" from the subscription and asked to add a payment card:



25. The user then inputs their credit card information, and receives an on-screen confirmation that "You will be charged $19.99," with no suggestion that the charge would be recurring:



26. After clicking the "PAY" link on that screen the user is returned to the creator's profile page, where a box in the middle of the page noted that the user was "SUBSCRIBED" in bold blue font, and with only a one-word indication (in smaller, lower-case, light gray font) that the subscription "Renews," and with the renewal date indicated in similarly small, light-gray font:



27. As shown, the creator's profile page does not include any indication as to how one can "unsubscribe," or otherwise cancel future monthly payments, even had he or she known to expect future monthly payments.

28. Upon making payment, the user will sometimes receive a confirmation email at the address they used in the sign-up process. That bare-bones confirmation email does not provide any information or reminder that the charge will be recurring or automatically renew, nor does it provide any information as to how the user can "unsubscribe," Fenix's cancellation policy, or any of the other information required by section 17602(a)(3):



29. In other circumstances, the details of which are unknown to Plaintiffs prior to taking discovery in this matter, the user receives no acknowledgement whatsoever after making payment, as exemplified by the instance where one paid $6.99 to follow the creator known as @annie_kay.

30. Furthermore, nowhere in the foregoing enrollment process to a particular creator's account does Fenix "first obtain[ ] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms," which is in further violation of section 17602(a)(2). In particular, on the webpage in the sign-up process where a user selects a username and inputs his or her email address and selects a password, Fenix includes (in light grey and light blue, extremely small text) a notification that "By signing up you agree to our Terms of Service and Privacy Policy," with hyperlinks to those documents, as seen in the following screenshot:



31. Clicking on the "Terms of Service" link takes a user to a separate webpage that consists of a 36-page set of "terms." Nowhere in that document are the terms of Fenix's automatic renewal offer set forth clearly and conspicuously either, in further violation of ARL section 17602. Rather, the automatic renewal explanation is buried on the eighteenth page of that document, as section 8.h under a heading titled "Terms of Use for Fans." There, it is presented in a way that is indistinguishable from any other term in the agreement.

32. All of these violations of the ARL occur systematically, in that each user who subscribes to each content creator's account receives the exact same legally inadequate disclosures on the front end of the transaction, and the exact same inadequate "acknowledgement" (or lack of any acknowledgement whatsoever) on the back end of the transaction.

33. With minor variations, this enrollment and subscription process has been substantially identical throughout the limitations period at issue in this action. In all events, at no point throughout the class period has Fenix fully complied with the requirements of the ARL.

34. Plaintiff John Doe 1 was subject to this same pattern of violation of the ARL in the

period from approximately June 2022 to January 2024, when under the username @u23099782 he subscribed to follow the accounts of OnlyFans creators @povlotti, @lupebaddy, @bellacortexmx, @jenny24cute. John Doe 1 was subject to one or more automatic renewal fees for each of these creators. The specific details of those amounts and dates are contained within Fenix's billing records for John Doe 1's user accounts.

35. Had John Doe 1 received the clear and conspicuous disclosures required by the ARL at the time he initially subscribed, and the post-subscription acknowledgment required by section 17602(a)(3) with details on the auto-renewal offer and a readily accessible means of canceling, he would have canceled his subscription prior to the renewal date, and would not have lost to Fenix the money associated with those auto-fees.

36. Plaintiff John Doe 2 was subject to this same pattern of violation of the ARL when under the username @Ehuhhhhhh he subscribed to follow the accounts of, among others, OnlyFans creators @izabellaxo, @beagt00 @karleystokes. When subscribing to those accounts John Doe 2 failed to receive an adequate set of disclosures at the time of that transaction to clearly and conspicuously advise him that his card would be automatically billed upon expiration of his initial enrollment period. Similarly, John Doe 2 did not receive any post-transaction acknowledgement advising him of the matters set forth in section 17602(a)(3).

37. When a Fan contacts Fenix to express surprise at having been automatically billed for a successive month, Fenix responds with a more fulsome explanation of the auto-renewal process. A sample of that communication is:

> Hi there,
>
> Thanks for reaching out.
>
> The auto-renewal for the subscription to @taste.of.heaven was not disabled before the next billing date. The auto-renew feature was enabled from the start, I am sorry you did not notice this at first.
>
> You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and make sure that Auto-Renew for your subscription is disabled:
> https://onlyfans.com/my/subscriptions/

> If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date - it means that Auto-Renew is already disabled.
>
> Users can unsubscribe anytime, but there are no refunds as all subscriptions are final and non-refundable. Please see more details at this page: https://onlyfans.com/terms
>
> Feel free to let us know if we can help you with anything else in the future.
>
> Evans

38. In other words, Fenix fully acknowledged the likelihood that a Fan will "not notice this [auto-renewal billing] at first," but nevertheless advise that "there are no refunds as all subscriptions are final."

39. In another instance where a Fan complained of being automatically charged a renewal fee and thereafter complained, Fenix responded with a similar message:

> Hi there,
>
> Thank you for using OnlyFans.
>
> According to our system, your account associated with the email address noahbreeze@gmail.com was charged $14.99 on Jan 24, 2022 for the subscription renewal to the user @cheriedeville. The auto-renew feature is enabled by default. You have been notified about upcoming renewals via feed hints.
>
> You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and make sure that Auto-Renew for your subscription is disabled: https://onlyfans.com/my/subscriptions/active
>
> If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date- it means that Auto-Renew is already disabled. Simply click on the corresponding button to change the Auto-Renew status.
>
> Users can disable their subscriptions anytime, but all payments on our platform are final and non-refundable. Please see more details on this page: https://onlyfans.com/terms.
>
> Check out some useful info here and feel free to let us know anytime you need help.
>
> Dwayne

OnlyFans

40. In other words, Fenix fully acknowledged that "[t]he auto-renew feature is enabled by default," and that the primary notice of such a renewal were "hints" the Fan supposedly received in his "feed."

## CLASS ALLEGATIONS

41. John Doe 1 and John Doe 2's experiences with Fenix's deceptive automatic renewal scheme are far from unique. Indeed, every California consumer who subscribed to every creator account within the relevant statute of limitations period failed to receive the disclosures that California law requires in substantially the same way that John Doe 1 and John Doe 2 failed to receive them. Because all of those automatic renewal fees assessed against California consumers were "unlawful," B&P Code § 17602(a), John Doe 1 and John Doe 2, and all members of the class they seek to represent are entitled to restitution of the fees they paid, in every successive month for which they were assessed.

42. This action follows a prior class action that had been filed in Riverside County Superior Court on October 24, 2022 which alleged the same class. The action had been removed to the Central District of California on December 5, 2022, as *Muto et al. v. Fenix International Limited, et al.*, No. 22-cv-02164. The district court dismissed that complaint on May 2, 2024, erroneously ruling that Fenix is not subject to personal jurisdiction in California. Pursuant to the rules for tolling the limitations period for absent class members under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the limitations period applicable to this case reaches back to four years prior to the filing of the *Muto* action—October 24, 2018.

43. John Doe 1 and John Doe 2 bring this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class:

> All individuals in California who subscribed to the accounts of one or more OnlyFans creators within the limitations period, and who were subsequently assessed an automatic renewal fee associated with those account(s), where the charge for that fee was not charged back to Fenix.

44. Excluded from the Class are all employees of Fenix, and the judicial officers to whom this case is assigned.

45. Plaintiffs reserve the right to amend this class definition as necessary and appropriate prior to moving for class certification.

46. The proposed class is so numerous that joinder of all class members would be impracticable. Upon information and belief, Plaintiffs allege that the class includes at least 10,000 members. The class members are all ascertainable from records in possession of Fenix, specifically Fenix's customer and billing records. Furthermore, Fenix's actions against class members are generally applicable to every member of the proposed class, thereby making appropriate restitution and further injunctive relief appropriate as to the entire proposed class.

47. The questions of law and fact that are determinative of Plaintiffs' allegations are shared by all members of the class, and greatly predominate over any individual issues. Common questions include, without limitation: (1) whether Fenix presents all statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of California law and in visual proximity to a request for consent to the offer; (2) whether provide the post-transaction acknowledgement disclosures required by section 17602(a)(3) of the ARL; (3) Fenix's policies, practices and procedures for obtaining affirmative consent from their California customers before charging their credit or debit card; and (4) the appropriate remedies for Fenix's conduct.

48. Plaintiffs' claims are typical of the claims of the class members in that they received the exact same inadequate pre-transaction disclosures as received by all members of the class, and similarly received an inadequate post-transaction "acknowledgement" that failed to include the contents required by section 17602(a)(3). Plaintiffs' claims are further typical in that their cards were charged for an automatic renewal fee without Fenix having first obtained their affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms. Plaintiffs furthermore have no interests that are adverse to those of the absent class members, and they have committed to fairly and adequately protect the interests of those class members.

49. A class action is superior to other methods for resolving this controversy. Because the amount of restitution to which each Class member may be entitled is low in comparison to the

expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their statutory rights have been violated, so they would be unlikely to pursue single-party remedies on their own behalf absent a class action. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

### FIRST CAUSE OF ACTION

**(Violation of the California Unfair Competition Law, B&P Code § 17200 *et seq.*)**

50. Plaintiffs hereby incorporate the allegations of all preceding paragraphs as though fully set forth herein.

51. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. *Id.* § 17204. Such a person may bring such action on behalf of her- or himself and others similarly situated who are affected by the unlawful business practice or act.

52. The predicate unlawful acts described above as violating the ARL do not require any showing of fraud or deception to establish a violation. The violations of the ARL are established through objective facts and criteria. As a result, a showing of individual reliance is not a required element of this claim.

53. In the course of conducting business in California within the applicable limitations period, Fenix committed unlawful business practices by, *inter alia* and without limitation: (a) failing to provide the terms of Fenix's OnlyFans Subscription offer terms "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) failing to obtain the affirmative consent of consumers to those terms before charging for the OnlyFans Subscription, in violation of *id.* § 17602(a)(2); (c) failing to provide an acknowledgment that includes the OnlyFans Subscription offer terms, Fenix's cancellation

policy, and information regarding how to cancel in a manner that is capable of being retained by OnlyFans consumers, in violation of *id.* § 17602(a)(3); and (d) failing to provide an immediate, one-step method of online cancellation pursuant to ARL section 17602(d)(1)(A)–(B).

54. Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

55. Plaintiffs have lost money as a result of Fenix's unlawful acts of unfair competition, in that Plaintiffs would not have incurred the automatic renewal fees associated with their initial purchases of OnlyFans Creator content had Fenix fully, clearly, and conspicuously apprised them of the terms of the automatic renewal offer described herein.

56. As a result of their violations of the ARL, Fenix never obtained Plaintiffs', or the Class's, affirmative consent to the automatically renewing charges, *see id.* § 17602(a)(2), and all Creator Content available as a result of those charges were unconditional gifts, *see id* § 17603, for which Fenix could not lawfully charge Plaintiffs and the Class.

57. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the members of the class are entitled to restitution of all amounts paid to Fenix in connection with an automatic renewal membership program over the four years preceding the filing of the initial class complaint on October 24, 2022, and continuing until the earlier of the resolution of this action, or the time that Fenix ceases the acts of unfair competition alleged herein.

58. Unless enjoined and restrained by this Court, Fenix will continue to commit the violations alleged herein. Pursuant to Cal. Bus. & Prof. Code § 17203, on behalf of the class, and for the benefit of the general public of the State of California, Plaintiffs seeks an injunction prohibiting Fenix from continuing its unlawful practices as alleged herein.

59. Plaintiffs on behalf of the general public of the State of California, seek a court order for public injunctive relief, declaratory relief and all other relief deemed appropriate in the circumstances including that enjoining Fenix from such future misconduct, and any other such orders that may be necessary to rectify Fenix's unlawful business practices and conduct. Such relief is appropriate and necessary to protect members of the general public who have not yet transacted with Fenix but are likely to and therefore remain at risk of future harm and thus, need

| | |
|---|---|
| 1 | protection from ongoing and continuing violations of the ARL and UCL, as described above. |
| 2 | Such relief will create a public benefit. |

60. Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5 and other applicable law for bringing this action.

**PRAYER**

Plaintiffs pray for judgment on behalf of themselves and all members of the class alleged herein, against Fenix, as follows:

1. For restitution of the amounts unlawfully charged Plaintiffs and members of the class in violation of the ARL;

2. For prejudgment interest;

3. For declaratory and injunctive relief as may be appropriate;

4. Separate from any Class relief, public injunctive relief against further violations of the ARL by Fenix;

5. For reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and all other applicable law;

6. For costs of suit; and

7. For all such other relief as the Court deems just and proper.

Dated: October 10, 2024　　　　　　　　　GAW | POE LLP


By: s/ *Mark Poe*
　　　MARK POE
　　　Attorneys for Plaintiffs