UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

___________________

| | | |
|---|---|---|
| **Jane Doe 1, et al,** **Plaintiffs,** | ) | No. 3:24-cv-03713-CRB |
| **vs.** | ) | |
| **Fenix International Limited, et al,** **Defendants.** | ) | San Francisco, California September 27, 2024 10:35 a.m. |

**BEFORE: THE HONORABLE CHARLES R. BREYER, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM VIDEOCONFERENCE**

**MOTION TO DISMISS HEARING**

**Official Court Reporter:** (By Zoom Teleconference)
**Hilda E. Lopez, RMR, FCRR**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

**APPEARANCES:** (By Zoom Videoconference)
For the Plaintiffs:
GAW POE LLP
By: **Mark Poe, Esq.**
4 Embarcadero, Suite 1400
San Francisco, CA 94111

For the Defendant: (By Zoom Videoconference)
ORRICK HERRINGTON & SUTCLIFFE LLP
By: **Jonathan A. Direnfeld, Esq.**
**Amisha R. Patel, Esq.**
2100 Pennsylvania Avenue NW
Washinghton DC 20037

**P R O C E E D I N G S**

COURTROOM DEPUTY: Good morning. I wanted to notify the parties that this morning's court reporter is Hilda Lopez.

Any other recording of this proceeding either by video, audio, including screenshots, is strictly prohibited. We'll get started momentarily. Thank you.

THE COURT: John Doe vs. Fenix.

COURTROOM DEPUTY: Okay. I will promote the parties. One moment.

(Proceedings commence at 10:35 a.m.)

COURTROOM DEPUTY: Calling civil action C 24-3713, Doe 1, et al vs. Fenix International Limited, et al. Counsel, please state your appearances.

MR. POE: Good morning, Your Honor, Mark Poe for the plaintiffs.

MR. DIRENFELD: Good morning, Your Honor, Jonathan Direnfeld and Amisha Patel for the defendants.

THE COURT: Good morning. So do you have anything to add to what has been submitted?

MR. POE: Your Honor --

MR. DIRENFELD: Your Honor, I believe it's our motion, and I would say we -- I think we briefed everything we wanted to. We think we made our arguments. Happy to answer any questions that the Court may have, but otherwise I don't

believe there's anything we need to add.

MR. POE: Your Honor, for the plaintiffs, only with respect to their Motion to Dismiss Fenix Internet, the second defendant, and I confess in our opposition brief, this is the very last argument in both sets of briefing, I had not appreciated that the violation for charging a consumer's card was predicated on that being the business that makes an automatic renewal offer. To our knowledge, defendants are correct that Fenix Internet is not the company that makes the automatic renewal offer, and so the argument that we've made, I confess that we would lose -- should lose.

I would ask only if Your Honor will allow me to, to point out that their assertion that Fenix Internet is not involved in any way in the disclosures is made only by a declaration outside the pleadings. And so I would ask, assuming that claim against Fenix Internet is dismissed, for leave to amend and perhaps 14 days.

And I ask -- I confess also that I don't right now know of plausible facts that we could allege or a theory that we could allege, but in consultation with my team, I would like to be able to have the opportunity to amend those allegations. And, of course, if we can't come up with anything in 14 days, we wouldn't amend and that time would pass.

THE COURT: Let me raise another issue because I believe that basically the complaint survives. The issue in

John Doe, or anonymous plaintiffs, because it's quite controversial in terms of federal lawsuits. There are times that it's appropriate to -- to be able to sue anonymously, and I don't know whether this is one of them. And I am very concerned, as I have been for my time on the bench, that public filings -- that trials and proceedings are public, are public, not private, or secret.

Nevertheless, it did occur to me that there probably are some plaintiffs out there who take the view that they don't need to protect their identity. Now, I know -- or their anonymity. I do know that obviously the identity of the proposed plaintiffs is known to the defense if you filed declarations under seal explaining the use of any particular plaintiff or named plaintiff's history with respect to subscriptions and utilizing the service.

So it's not a question of fairness to the defendant. Rather, it's -- and so I don't expect, you know, this would not have been raised by the defendant because they are being apprised of who these people are. On the other hand, it is the fact that it's a public proceeding that gives me some concern.

So what I am going to do is ask the plaintiffs to revisit the question of whether -- I mean, obviously, I don't know how large, there are more than two people that have been purportedly subjected to this automatic subscription renewal, and are there plaintiffs who would choose to come forward or

allowed to come forward and be identified. That takes care of the problem.

If the answer is no, there aren't, then I would like the plaintiffs to brief the subject of whether they are deserving of anonymity in these proceedings.

So with that, I will write something in connection with the motion and then we'll just take it from there, okay?

MR. DIRENFELD: Your Honor, did I hear you correctly, I couldn't hear if you decide the complaint survives, or did you say that you've made a decision?

THE COURT: I believe that the complaint survives. Nevertheless, I want to set forth my reasons for it in an opinion, and -- and I want to, you know, if I adhere to that, which I think I will, I'm going to then ask the plaintiffs to answer the questions that I've raised.

MR. DIRENFELD: And I think, Your Honor, I would just note from the defendants' side, and obviously we'll see what Your Honor writes, I think there is, as you've seen in our papers, right, we have a decision from the Central District of California from Judge Sykes, which found that the exact same complaint does not survive for personal jurisdiction on the exact same set of facts. And so I think from our perspective, and obviously we will look at what Your Honor writes, I think we -- I just will preview, Your Honor, I think we may, based on that, we may seek, you know, further relief from you or we may

see at that point we may have a conflict within the Ninth Circuit within the exact same facts as to whether personal jurisdiction --

THE COURT: Well, let's pursue that for a minute. You say another District Court came out the other way. That's your point; right?

MR. DIRENFELD: Yes, Your Honor.

THE COURT: So what? I mean, so what? By the way, the other District Court may be right; I could be wrong. It's not a question of who is right and who is wrong. I know from your point of view it's exactly the question of who is right and who is wrong. But the fact that some other District Court took a different position, did take a different position, is not a justification for an appeal.

At this point, I mean, I wouldn't allow an interlocutory appeal. So -- 'cause I am not guided -- I'm not bound by some other district court whether it's in the Northern District of California, Central District or any other court. I'm certainly bound by the Ninth Circuit.

MR. DIRENFELD: Understood, Your Honor. I understand that, Your Honor, and so I wasn't necessarily saying that you were bound. I think what we were saying, and again, we'll look at what you write, is that we have the exact same, right, complaint, exact same allegations, brought in the Central District, dismissed finding there is not jurisdiction. Same

one here. Understanding, Your Honor, right, is not bound, by finding on the same facts that there is jurisdiction. And so there is a dispute. The question on the exact same complaint, Your Honor, and I completely understand, and we obviously we will look at what you write and brief it, I do think, though, that there is a question there in terms of two courts have looked within the, you know, within the Ninth Circuit have looked at the exact same complaint, the exact same facts, and would have reached different conclusions as to jurisdiction.

THE COURT: Well, this is the Muto case.

MR. DIRENFELD: Yes. I got to find my reference to Muto, so hold on.

THE COURT: How did the plaintiffs distinguish Muto?

MR. POE: So Muto's analysis, Your Honor, was only three sentences, and it focused exclusively on purposeful direction question of whether Fenix Internet directed, specifically directed its conduct at residents in the state of California, but that's only one route for establishing jurisdiction. Purposeful availment is another.

And of course, the Ninth Circuit case law says a defendant who consummates transactions with residents in a foreign state is subject to specific jurisdiction. I'm sorry. It's in our briefing, but here we have over 10,000 on tracks that, at least with our class reps, have extended for periods of years and involve dozens or hundreds of financial

transactions pursuant to the terms of that contract. That's purposeful availment.

THE COURT: Yeah. I mean, the question is whether the plaintiffs have sufficiently pleaded that the defendants' interactive website and commercial activity satisfies the first prong of specific jurisdiction. I mean, it does.

MR. DIRENFELD: Can I just answer, Your Honor, as it relates --

THE COURT: Of course you can. Go right ahead.

MR. DIRENFELD: Thank you. So first, I think if you look at the Muto decision, Your Honor, I believe that --

THE COURT: I got it right here. I am looking at it.

MR. DIRENFELD: So if you look at page 9 of the Muto decision, if you look under the legal standard, you know, Judge Sykes lays out and she talks both about determine whether defendant purposefully directed its activities toward the forum, right, and discusses the standard there, and then next talks about, you know, in order to show personal -- purposeful availment, right, the plaintiff must show. And then, you know, when going down, right, and talking about her decision, she notes that when she states plaintiffs are mistaken, she says, you know: As the Ninth Circuit has made clear, the mere operation of interactive websites visited by a resident of a particular state does not by itself establish that the defendant either expressly aimed. So that purposefully --

purposeful direction, its conduct, the state, or deliberately reached out to it, which is purposeful availment. So she did reach both questions in her decision, Your Honor.

The second thing I would note on the question here is we would -- we would state, Your Honor, that the correct analysis here, and we don't actually believe that there's a difference, but is purposeful direction because it is a UCL claim, and a UCL claim found in tort, not contract, and so therefore, purposeful direction, to the extent there is a distinction between the two, would be the correct analysis. And I can point you to one cite, at least, which is the -- which is *Mendoza vs. Electrolux Home Products*, Your Honor.

But I believe that first Judge Sykes reached both prongs in reaching her decision. Nothing has -- nothing has changed, Your Honor, I think, except that the plaintiffs re-filed their complaint here, right, seeking a different outcome on the exact same complaint and the exact same allegations against the defendant.

THE COURT: Okay. I'll take a look at it. Thank you very much.

MR. DIRENFELD: Thank you, Your Honor.

(Proceedings concluded at 10:50 a.m.)

---oOo---

**C E R T I F I C A T E**

I, HILDA E. LOPEZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 1st day of October, 2024.

/s/Hilda E. Lopez

Hilda E. Lopez, RMR, FCRR