IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE 1, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FENIX INTERNATIONAL LIMITED,<br><br>    Defendant. | Case No. 24-cv-03713-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

In this case, Plaintiffs John Doe 1 and John Doe 2, subscribers of the online sexual content platform OnlyFans, have brought a class action complaint against Defendant Fenix International Limited, the owner of OnlyFans, alleging that by automatically renewing monthly subscriptions, OnlyFans violates California's Automatic Renewal Law (ARL). See FAC (dkt. 29) ¶¶ 20–49. Defendant moves to dismiss, arguing that the Court lacks jurisdiction over it, that the case must be tried in England/Wales given the forum selection clause in the OnlyFans Terms of Service, and that Plaintiffs lack standing. See MTD (dkt. 17) at 1.

## I. BACKGROUND

### A. The Parties

Defendant is a company registered and incorporated in England and Wales, with headquarters in London. FAC ¶ 8. Defendant owns and operates OnlyFans, a "popular sexual content platform" and social media website where customers subscribe to Content Creators to view those creators' posts. Id. ¶ 2. These subscriptions automatically renew and "are the cornerstone of Defendant's revenue model." Id. Defendant receives some or

all of the automatic renewal fees paid by OnlyFans customers.  Id. ¶ 8.

John Doe 1 is a resident of Contra Costa County, California, and John Doe 2 is a resident of Riverside County, California.  Id. ¶¶ 4–5.  Plaintiffs bring this class action on behalf of themselves and other similarly situated California residents.  Id. ¶ 3.  Plaintiffs' proposed class includes at least 10,000 Californians who have entered contracts to view content on OnlyFans.  Id. ¶ 13.

### B. The Dispute

Plaintiffs allege that Defendant violates the ARL by failing to properly notify customers that OnlyFans automatically renews monthly subscriptions, thereby tricking customers into making recurring payments.  Id. ¶ 2.

Plaintiffs' complaint walks through the enrollment and subscription process, detailing alleged inadequacies in the subscription notifications that Defendant sends its users.  Id. ¶¶ 21–34.  To access OnlyFans, a user must create an account with a username, email, and password.  Id. ¶¶ 22, 30.  Included below the sign-up text boxes is "(in light grey and light blue, extremely small text) a notification that '[b]y signing up you agree to our Terms of Service and Privacy Policy' with hyperlinks to those documents."  Id.  The Terms of Service document includes a single paragraph about customer subscriptions, noting that all purchases are final and that a user can cancel a subscription by emailing OnlyFans' support team or by "turning off the 'auto-renew' switch located under the relevant user profile."  See Taylor Decl. (dkt. 17) Ex. A at 13.

Once a customer has created an account on OnlyFans, the customer can navigate to a creator's profile page and click on a "subscribe" icon.  FAC ¶¶ 23–24.  To the right of the word "subscribe" is the price "per month" of the subscription.  Id. ¶ 23.  When a customer clicks the subscribe icon, a pop-up appears on the screen that "confirm[s the] subscription purchase" and notes that, for example, the customer "will be charged $19.99," with no suggestion that the charge will be reoccurring.  Id. ¶ 25.  The customer then has the option to either pay or cancel.  Id.  After the customer confirms their purchase, the creator's page reads that the customer is "'SUBSCRIBED' in bold blue font, and with only

1  a one-word indication (in smaller, lower-case, light gray font) that the subscription
2  'renews' and with the renewal date indicated in a similarly small, light grey font." Id.
3  ¶ 26. There is no information on the creator's page about how to unsubscribe and prevent
4  future monthly payments. Id. ¶ 27. Additionally, upon subscribing, the customer "will
5  sometimes receive a confirmation email . . . [and] that bare-bones confirmation email does
6  not provide any information or reminder that the charge will be recurring or automatically
7  renew, nor does it provide any information as to how the user can 'unsubscribe.'" Id. ¶ 28.
8  The email instead simply notes that, for example, the customer has successfully
9  "subscribed for $19.99" to that creator. Id. OnlyFans customers are billed monthly for
10 their subscriptions. Id. ¶¶ 9, 27. The "[m]onthly subscription renewal fees rang[e] from
11 $4.99 to $49.99 per month (an average of $12)" depending on which and how many
12 creators a customer subscribes to. Id. ¶ 9. Plaintiffs allege that this is inadequate—
13 OnlyFans "tricks its customers into making recurring payments" because it fails "to clearly
14 and conspicuously advise its customers that their initial subscription to a creator will be
15 automatically renewed" and fails to properly inform its customers on how to cancel their
16 monthly subscriptions. Id. ¶¶ 1–2.
17       C.    **Procedural History**
18            1.    **This Case**
19 Plaintiffs brought suit on June 20, 2024 against Defendant Fenix International
20 Limited and its subsidiary Fenix Internet LLC. See Complaint (dkt. 1). Defendants
21 moved to dismiss the motion on August 8, 2024, see MTD, Plaintiffs opposed the motion,
22 and Defendants replied, see Opp'n (dkt. 21); Reply (dkt. 24). Following the motion
23 hearing on September 27, 2024, the Court requested additional submissions from the
24 parties as to whether Plaintiffs' claim sounds in tort or in contract. See Order re Motion to
25 Dismiss (dkt. 28) at 1–2, n.2. The Court also gave Plaintiffs an opportunity to amend the
26 complaint, adding "additional allegations, if they can do so, as to all of Defendants'
27 California-specific contacts." Id. at 1. Plaintiffs dropped their claim against Fenix Internet
28 upon amending their complaint. See FAC. The amended complaint does not include

1    additional allegations of California-specific contacts.  See id.
2         The FAC alleges that Defendant violates the ARL primarily by:
3    - failing to provide automatic renewal terms in a clear and conspicuous manner
4      before the fulfillment of and in visual proximity to the subscription agreement, in
5      violation of California Business & Professions Code § 17602(a)(1);
6    - charging a consumer's credit or debit card without first obtaining the consumer's
7      affirmative consent to the agreement containing automatic renewal terms, in
8      violation of § 17602(a)(2); and
9    - failing to provide an acknowledgment that includes the automatic renewal offer
10     terms as well as the cancellation policy, and information on how to cancel a
11     subscription, in violation of § 17602(a)(3).
12   Id. ¶¶ 20, 53; see also Cal Bus & Prof Code § 17602.
13        As there is no private right of action under the ARL, Plaintiffs bring suit under
14   California's Unfair Competition Law (UCL).  FAC ¶ 51; Cal. Bus. & Prof. Code
15   §§ 17200, 17204.  Plaintiffs seek injunctive and monetary relief for themselves and the
16   class.  FAC ¶ 3.  Plaintiffs also seek public injunctive relief on behalf of the general public
17   of California who have yet to transact with Defendant but are at risk of doing so.  Id. ¶ 19.
18        Defendant moves to dismiss Plaintiffs' claim for lack of personal jurisdiction,
19   forum non conveniens, and lack of standing.  See MTD at 1.  The parties have each
20   submitted the supplemental briefs the Court requested.  See P. Supp. Br. (dkt. 32); D.
21   Supp. Br. (dkt. 31).

### 2.    The Muto Case

23        This complaint was proceeded by a similar class action case, Muto v. Fenix Int'l
24   Ltd., decided earlier this year in the U.S. District Court for the Central District of
25   California.  See No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2,
26   2024).  In Muto, Judge Sunshine Sykes concluded that the court lacked personal
27   jurisdiction over Defendant with respect to Plaintiffs' ARL claim, and dismissed the case.
28   Id. at *4–5.  Judge Sykes held: "the mere operation of [an] 'interactive website' visited by

residents of a particular state does not, by itself, establish that Defendant either 'expressly aimed' its conduct at that state or 'deliberately reached out' to it." Id. at *4. Plaintiffs in the current complaint were not parties in Muto. Opp'n at 2.

## II.  LEGAL STANDARD

Under Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). A prima facie showing is established if the plaintiff produces admissible evidence that, if believed, would be sufficient to establish personal jurisdiction. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d. 1122, 1129 (9th Cir. 2003). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010). However, "bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007). Additionally, conclusory allegations or "formulaic recitation of the elements" are not entitled to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). In assessing whether personal jurisdiction exists, the court is not limited to a plaintiff's complaint and may consider evidence presented in affidavits, or order discovery on jurisdictional issues. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

## III.  DISCUSSION

Defendant makes three arguments to support its motion to dismiss Plaintiffs' UCL claim: forum non conveniens, lack of standing, and lack of personal jurisdiction. The Court need not reach forum non conveniens and standing because it agrees with Defendant that the Court does not have personal jurisdiction. See MTD at 5–7; D. Supp. Br. at 3–7.

Personal jurisdiction can be either general or specific. See <u>Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco Cnty.</u>, 582 U.S. 255, 262 (2017). Plaintiffs only assert specific jurisdiction. See Opp'n at 3. Specific jurisdiction depends on the relationship between the defendant, the forum, and the litigation. See <u>Walden v. Fiore</u>, 571 U.S. 277, 284 (2014). "Although a nonresident defendant's physical presence within the territorial jurisdiction of the court is not required," a defendant must still have "minimum contacts" with the forum state "such that the suit does not offend traditional notions of fair play and substantial justice." <u>Id.</u> at 283 (citation omitted).

As a framework for applying these principles, the Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction:"

> (1) The non-resident defendant must <u>purposefully direct</u> his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he <u>purposefully avails</u> himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which <u>arises out of</u> or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be <u>reasonable</u>.

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added) (citation omitted). "The plaintiff bears the burden on the first two prongs," and once those are established, the defendant must make a "'compelling case' that the exercise of jurisdiction would not be reasonable." <u>Ayla, LLC v. Alya Skin Pty. Ltd.</u>, 11 F.4th 972, 979 (9th Cir. 2021) (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270–71 (9th Cir. 1995).

    A.    **Purposeful Direction or Purposeful Availment**

        1.    **Applicable Analysis**

The parties disagree as to whether the purposeful direction test or the purposeful availment test applies. See D. Supp. Br. at 3–6; P. Supp. Br. at 1–3. Both inquiries seek to determine if a defendant has voluntarily derived some benefit from its interstate activities,

6

such that it "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1090 (9th Cir. 2023) (citation omitted).  Generally, for suits that sound in tort, the Ninth Circuit applies the purposeful direction analysis, asking whether a defendant has purposefully directed activities at the forum state.  See AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020); Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011); Herbal Brands, 72 F.4th at 1091.  And, generally, for suits that sound in contract, the Ninth Circuit applies the purposeful availment analysis, asking whether the defendant has availed itself of conducting business in the forum state.  See Doe v. WebGroup Czech Republic, a.s., 93 F.4th 442, 452 (9th Cir. 2024); see also Schwarzenegger, 374 F.3d at 802.

Plaintiffs argue that because this dispute arises out of their contracts with Defendant, this suit sounds in contract, and therefore the Court should engage in a purposeful availment analysis.  See P. Supp. Br. at 1–2.  This argument is unpersuasive.

First, Plaintiffs rely on distinguishable cases.  Plaintiffs cite to Joseph Saveri L. Firm, Inc. v. Criden, 696 F. App'x 189, 191 (9th Cir. 2017).  See id. at 1.  But in Saveri, 696 F. App'x at 191, the plaintiffs sought declaratory judgment that an implied contract existed—an allegation that clearly sounds in contract.  Plaintiffs also cite to Stanford Ranch v. Maryland Cas. Co., 89 F.3d 618, 625 (9th Cir. 1996).  See P. Supp. Br. at 1.  However, Stanford Ranch, 89 F.3d at 625, involved a breach of contract claim brought against a liability insurance company; it involved insurance coverage, not personal jurisdiction.[1]  And Plaintiffs cite to Liggett v. Utah Higher Education Assistance

---

[1] Plaintiffs emphasize a particular quote from Stanford Ranch that "a claim dependent on the existence of an underlying contract, sounds in contract, as opposed to tort." P. Supp. Br. at 1 (citing Stanford Ranch, 89 F.3d at 625).  Yet, in making that statement, Stanford Ranch cited to two cases that the California Supreme Court subsequently disapproved.  See Ins. Co. of the W. v. Haralambos Beverage Co., 241 Cal. Rptr. 427, 430–31 (Ct. App. 1987), disapproved of by Buss v. Superior Ct., 16 Cal. 4th 35 (1997), and disapproved of by Vandenberg v. Superior Ct., 21 Cal. 4th 815 (1999); Fireman's Fund Ins. Co. v. City of Turlock, 216 Cal. Rptr. 796, 800 (Ct. App. 1985), disapproved of by Vandenberg 21 Cal. 4th 815.  The California Supreme Court disapproved these cases, holding that when deciding if an insurance liability claim sounds in tort or in contract, courts should look to the nature of the damage and risks involved to determine what controls

Authority, No. 8:19-cv-01589-JLS-ADS, 2020 WL 1972286, at *3 (C.D. Cal. Feb. 3, 2020), which held that while the plaintiff brought statutory claims, "the case as a whole sound[ed] in contract because the tort claims . . . arise out of [defendant's] conduct in connection with an underlying contractual relationship." P. Supp. Br. at 1–2. But in that case, the plaintiff alleged that the defendant did not properly investigate his credit report as required in connection with their underlying contractual relationship—the court even emphasized that the borrower-lender relationship between the parties was "fundamentally contractual." See Liggett, 2020 WL 1972286, at *1, *3, n.5.

Plaintiffs' argument that the Court should engage in a purposeful availment analysis because the dispute arises out of the existence of a contract is therefore unconvincing. While this dispute involves contracts,[2] the case is not about whether those contracts existed, or whether Defendant violated those contracts. See FAC ¶ 20. Instead, Plaintiffs contend that Defendant failed to comply with the notification requirements of the ARL and violated the UCL's unlawful prong—actions that sound in tort. See id. ¶¶ 20, 35, 36, 41.

Second, many "[c]ourts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL." Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd., No. 18-CV-07517-LHK, 2019 WL 4221590, at *7 (N.D. Cal. Sept. 5, 2019) (citing Miller v. S & S Hay Co., No. 1:12-CV-01796-LJO, 2013 WL 3212494, at *2 (E.D. Cal. June 24, 2013)); see also Scheibe v. Health & Wellness Ctr., Inc., No. 23-CV-00084-DMS-JLB, 2023 WL 7169080, at *3 (S.D. Cal. Oct. 31, 2023); Woolfson v. Conn Appliances, Inc., No. 21-CV-07833-MMC, 2022 WL 888442, at *4 (N.D. Cal. Mar. 25, 2022). Plaintiffs argue that UCL causes of action that sound in tort are cases where the "thrust of the action concerned underlying conduct by the defendant that was tortious in

---

coverage. Vandenberg, 21 Cal. 4th at 839. The court "rejected the ex contractu/ex delicto distinction" that previously distinguished claims that arose out of contracts to be analyzed through contract damages as opposed to tort damages. Id.

[2] Defendant newly adds that "the subscriptions about which Plaintiffs complain are not contracts between Plaintiffs and [Defendant], but rather contracts between Plaintiffs and the Creators to whom they subscribed." D. Supp. Br. at 3; see also Taylor Decl. Ex. C at 45 ("All Fan/Creator Transactions are contracts between Fans and Creators . . . ."). The Court need not address assertion.

nature." P. Supp. Br. at 1. However Plaintiffs fail to identify similar UCL cases applying a purposeful availment analysis. Furthermore, courts in the Ninth Circuit have applied the purposeful direction test to UCL claims based on violations of statutes and falling within the UCL's unlawful prong. See Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015); Miller, 2013 WL 3212494, at *2. Again, Plaintiffs do not allege that Defendant has breached its contracts with Plaintiffs, a claim that would sound in contract. Instead, Plaintiffs allege Defendant failed adequately to advise customers of the renewing nature of a subscription in violation of a California law, a claim that sounds in tort. See FAC ¶ 2. Because Plaintiffs bring a UCL claim alleging financial damages resulting from Defendant's ARL violations, id. ¶ 51, the Court will engage in a purposeful direction inquiry.

Third, Plaintiffs argue that it does not matter if their claim sounds in tort or in contract because the Ninth Circuit in Davis v. Cranfield Aerospace Sols., Ltd. 71 F.4th 1154, 1161 (9th Cir. 2023), cert. denied, 144 S. Ct. 826 (2024), stated that courts can use both purposeful direction and purposeful availment when determining personal jurisdiction. P. Supp. Br. at 2–3. Plaintiffs contend that the Court should not give much weight to Herbal Brands—which held, post-Davis, that courts should use the purposeful direction test when cases sound in tort, and the purposeful direction test when cases sound in contract—because the Ninth Circuit issued Herbal Brands only twelve days after Davis. See P. Supp. Br. at 3; Herbal Brands, 72 F.4th at 1090 ("We have often said, without qualification, that the purposeful direction test applies when 'a case sounds in tort…'") (citation omitted). The Court disagrees. For one thing, the court in Herbal Brands was aware of Davis. See Herbal Brands, 72 F.4th at 1094 n.6 (citing Davis). Moreover, while Davis allows for some flexibility, it has not radically changed the personal jurisdiction analysis, as evidenced by language in more recent Ninth Circuit cases. See, e.g., Oceanside Health Prod., LLC v. Dvir Deri, LLC, No. 23-55481, 2024 WL 2269270, at *2 (9th Cir. May 20, 2024) ("We apply the 'purposeful direction' test when the claim is based on intentional torts, as is the case here.") (citation omitted)); WebGroup Czech Republic,

9

93 F.4th at 452 ("Although these two standards overlap to some extent, '[w]e generally focus our inquiry on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum.'") (citation omitted).[3]

The Court applies the purposeful direction test here because Defendant's alleged actions of charging customers without proper notice in violation of the unlawful prong of the UCL sound in tort, and because most courts apply the purposeful direction test when analyzing UCL claims. See, e.g., Alexandria Real Est., 2019 WL 4221590, at *7.

### 2. Purposeful Direction Test

Purposeful direction, or the "effects test," requires that a defendant has "[a] committed an intentional act, [b] expressly aimed at the forum state, [c] causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (citing Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

#### a. Intentional Act by the Defendant

The first part of the purposeful direction test is whether Defendant has committed an intentional act. See id. To satisfy the intentional act prong, "the defendant must act with the 'intent to perform an actual, physical act in the real world.'" Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 806). "The threshold of what constitutes an intentional act is relatively low." Here, Defendant operating a website that sells access to online sexual content is an intentional act. See

---

[3] Plaintiffs further argue that they can meet the first prong of personal jurisdiction by purposeful direction, purposeful availment, or "the consummation of some transaction within the forum." P. Supp. Br. at 3 (citing Davis, 71 F.4th at 1161–62). Plaintiffs contend that they have satisfied the "consummation of some transaction" language because of the hundreds of transactions between California residents and Defendant spanning over multiple years. See id. at 3–4. However, this argument is incorrect. Transacting in the forum falls within the purposeful direction test. The first prong of the specific personal jurisdiction test requires that "the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself . . . ." Davis, 71 F.4th at 1161–62 (emphasis added). The sole semicolon separates the purposeful direction inquiry from the purposeful availment inquiry and creates no separate inquiry for transactions within the first prong. Furthermore, as the Ninth Circuit has stated, the first prong of specific jurisdiction encompasses only two separate concepts—"purposeful availment" and "purposeful direction." See Glob. Commodities Trading Grp., 972 F.3d at 1107.

10

1   FAC ¶¶ 2, 9. Plaintiffs therefore meet the first prong of the effects test.

2                    **b.     Express Aiming**

3          The second part of the purposeful direction test turns on whether Defendant "expressly aimed" its intentional acts at the forum. See Schwarzenegger, 374 F.3d at 802. The express aiming inquiry centers on whether the defendant specifically targeted the forum state. See Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1143 (9th Cir. 2017) (citing Walden, 571 U.S. at 284). The Supreme Court has explained that the contacts supporting purposeful direction "must be the defendant's own choice and not [be] 'random, isolated, or fortuitous.'" Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The defendant must have "reached out beyond its home—by, for example, exploiting a market in the forum state." Id. (quotations and alterations omitted). Therefore, a defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state. See Walden, 571 U.S. at 284–85 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92, (1980)). Rather, the focus is on the defendant's "own contacts," i.e., "contacts that the 'defendant himself' creates with the forum state." See id. at 284 (emphasis in original) (internal quotations omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); see also Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017) ("The Court made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.") (quoting Walden, 571 U.S. at 289).

          The Ninth Circuit has held that operating an interactive website in conjunction with "something more" is required to established express aiming by a defendant with an online platform. See Herbal Brands,72 F.4th at 1091–92. An interactive website is a website where users can exchange information with the host computer, as opposed to a passive website where information is merely made accessible to a user. See id. at 1091. In prior cases, courts have found that "something more" exists when an internet company

purchases servers in a state to increase the speed with which residents of that state receive their content, see Will Co. v. Lee, 47 F.4th 917, 925 (9th Cir. 2022), or when a company ships a physical item purchased on an interactive website to a forum state, see Herbal Brands, 72 F.4th at 1088. When the website itself is the only jurisdictional contact, the analysis "turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." AMA Multimedia, 970 F.3d at 1209–10. In Mavrix Photo, the Ninth Circuit held that the defendant had expressly aimed its content, "celebrity-gossip.net," at California because the site maintained a specific focus on the California-centric entertainment industry and profited from third-party advertisements targeted at California residents, 647 F.3d at 1230. In contrast, in AMA Multimedia, the Ninth Circuit held that despite the fact that nearly 20% the traffic on the defendant's website came from U.S. users, and despite the fact that the defendant used a secondary DNS service located in the United States, the website lacked a forum-specific focus because "the market for adult content [was] global" and the defendant did not expressly aim its advertising or its website to a specific forum. 970 F.3d at 1211.

Here, Plaintiffs successfully show that OnlyFans is an interactive website. See FAC ¶¶ 23–31 (customers can subscribe to, like, and send content over the website). However, Plaintiffs fail to allege "something more" to show that Defendant expressly aimed its actions at California. Despite the Court granting Plaintiffs leave to add allegations of additional ties between Defendant and California, see Order re Motion to Dismiss at 1, Plaintiffs appear unable to allege any actions by Defendant like purchasing servers in California, focusing advertising at California residents, or shipping physical merchandise to California. Plaintiffs have alleged less even than the plaintiffs in Muto. See MTD at 5 n.4 (plaintiffs in Muto alleged "contacts with California such as performing age-verification for California Content Creators, various alleged employees working in California, athletic or other event sponsorships in the United States generally, conferences and other meetings in California, sales of OnlyFans branded 'clothing, towels, and household goods,' and OnlyFans's compliance with U.S. privacy and tax laws.").

Plaintiffs only allege that Defendant purposefully availed itself of conducting business in California because Defendant entered into thousands of online contracts of indefinite duration with California residents exceeding $400 million annually. See FAC ¶¶ 8, 10, 13. But those contracts do not result in the shipping of any "physical product" to Plaintiffs in California—this is therefore not the "something more" envisioned in Herbal Brands. See Herbal Brands, 72 F.4th at 1092–93 ("We now hold that if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum.").

Plaintiffs point to John Doe 1's and John Doe 2's transaction histories to show the hundreds of contacts that Plaintiffs made with Defendant from "IP Cit[ies]" in California. Id. ¶¶ 11–12. These allegations, however, fall short of showing that Defendant purposefully aimed its services at California, because the unilateral activity of Plaintiffs accessing Defendant's website and initiating contracts therein does not meet the requirement for something more. See Walden, 571 U.S. at 284–85 ("the relationship must arise out of contacts that the 'defendant himself' creates with the forum State.") (citing Burger King Corp., 471 U.S. at 475)). Furthermore, the allegation that Defendant profited from the forum is not persuasive when the profits resulted from the "users who access the site rather than from [Defendant's] targeting of forum users who access the site." See AMA Multimedia, 970 F.3d at 1211 n.7 (citation omitted) (emphasis added).

Plaintiffs' allegations do not show that Defendant expressly aimed its actions at California. The Court therefore concludes that Plaintiffs have failed to meet the second prong of the effects test.

      **c. Harm**

The third part of the purposeful direction test is whether Defendant knew that its intentional act would cause harm in the forum. See Schwarzenegger, 374 F.3d at 803. The focus of the inquiry "is not the magnitude of the harm, but rather its foreseeability." Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1141 (S.D. Cal. 2016). "A

13

defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." WebGroup Czech Republic, 93 F.4th at 456 (citation omitted). Here, Plaintiffs allege that by failing to provide the proper disclosures, Defendant tricked Plaintiffs into making recurring payments that ranged from $4.99 to $49.99, thereby financially harming Plaintiffs. See FAC ¶ 2. Plaintiff John Doe 1 stated that had he known of the automatic nature of the subscriptions, as required by the ARL, "he would have canceled his subscription prior to the renewal date and would not have lost to [Defendant] the money associated with those auto-fees." Id. ¶ 35. Plaintiffs therefore have at least adequately alleged harm, if not that Defendant knew that harm would occur in this forum.

Because Plaintiffs failed to show express aiming at California, Plaintiffs have failed to satisfy the "purposeful direction" prong. Plaintiffs have therefore failed to satisfy the three-prong test for specific personal jurisdiction. See Schwarzenegger, 374 F.3d at 802.

### B. Arises Out Of

Claims "arise out of" the defendant's contacts with the forum state when there is a causal connection between the contacts and the claims. See Bristol-Myers, 582 U.S. at 255. Claims that do not "arise out of" the defendant's contacts may nonetheless "relate to" those contacts. Ford Motor Co., 592 U.S. at 362. "The 'arises out of or relates to' standard requires a connection, relationship, or nexus between the plaintiff's claims and the defendant's contacts with the forum." Bluestar Genomics v. Song, No. 21-CV-04507-JST, 2024 WL 54701, at *7 (N.D. Cal. Jan 4, 2024). Because Plaintiffs have not met their burden on the "purposeful direction" prong, the Court need not reach the "arises out of" prong. See Omeluk, 52 F.3d at 270–71.

### C. Reasonableness

"The plaintiff bears the burden on the first two prongs," and once those are established, the defendant must make a "'compelling case' that the exercise of jurisdiction would not be reasonable." Ayla, 11 F.4th at 983–84. Because Plaintiffs have not met their burden on the "purposeful direction" prong, the Court need not reach the reasonableness

14

prong.  See Omeluk, 52 F.3d at 270–71.  Plaintiffs have failed adequately to allege specific personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss based on lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: November 22, 2024

CHARLES R. BREYER
United States District Judge

15