United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE 1, et al.,
Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, et al.,
Defendants.

Case No. 24-cv-03713-CRB

**ORDER DENYING MOTION TO DISMISS AND CERTIFYING INTERLOCUTORY APPEAL**

Plaintiffs John Doe 1 and John Doe 2 brought a putative class action against Defendant Fenix International Limited, the owner of sexual content platform OnlyFans, alleging violations of California's Automatic Renewal Law (ARL). See FAC (dkt. 29) ¶¶ 20–49. This order deals with jurisdictional issues following appeal.

## I. BACKGROUND

Fenix moved to dismiss in 2024, arguing among other things that Fenix was not subject to specific personal jurisdiction in California. MTD (dkt. 17). Specific personal jurisdiction requires (1) that a non-resident defendant either purposefully direct or consummate some transaction with the forum or purposefully avail itself of the privilege of conducting activities in the forum, (2) that the claim arise out of or relate to the defendant's activities in the forum, and (3) that the exercise of jurisdiction over the defendant be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). This Court granted Fenix's motion to dismiss based on the purposeful direction test. See Order Granting MTD (dkt. 33) at 14. That test requires that a defendant (1) commit an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

the defendant knows will be suffered in the forum state. See Briskin v. Shopify, Inc., 135 F.4th 739, 749–50 (9th Cir. 2025) (en banc). The Court based its holding on the express aiming element. Order Granting MTD at 11–13.

On appeal, the Ninth Circuit vacated that order, holding that Plaintiffs had satisfied the express aiming element. USCA Memo. (dkt. 47) at 2.[1] The Circuit remanded the case to this Court "to consider in the first instance whether the second and third factors of the personal jurisdiction test are satisfied." Id. The court did not address either Plaintiffs' argument that this Court should have given them leave to amend, or Fenix's argument that forum non conveniens also justified dismissal. USCA Memo. at 5.

On remand, this Court directed the parties to file supplemental briefs as to the remaining two elements of personal jurisdiction, amendment, and forum non conveniens. See Order Directing Briefing (dkt. 50). The parties have now done so. See Def. Br. (dkt. 51-3); Pl. Resp. (dkt. 54); Def. Reply (dkt. 55).

## II. DISCUSSION

Having carefully considered the parties' papers and the relevant law, the Court now addresses (A) personal jurisdiction, (B) amendment, (C) forum non conveniens, and (D) interlocutory appeal.[2]

### A. Personal Jurisdiction

The Court has little trouble concluding that Plaintiffs have met the remaining two elements of personal jurisdiction not addressed in the Circuit's order: (1) that the claims arise out of or relate to Fenix's activities in California, and (2) that the exercise of jurisdiction over Fenix is reasonable. See Schwarzenegger, 374 F.3d at 802.

---

[1] The court further explained that there was no dispute, for the purposes of the motion, as to the other two elements of the purposeful direction test: that Fenix committed an intentional act or that Plaintiffs alleged harm from that act. See id. at 3.

[2] In its supplemental brief, Fenix "renews its argument that this Court should dismiss for lack of standing." Def. Br. at 14. But this Court did not direct the parties to address the issue of standing. See Order Directing Briefing at 1–2. Moreover, Fenix's arguments about standing—that Plaintiffs' transaction histories prove that they knew that their OnlyFans subscriptions auto-renewed—are bound up in the merits of Plaintiffs' claims. The Court therefore does not rule on standing.

**1. Arise Out of or Relate To**

The "arise out of or relate to" element pertains to "'the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.'" Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1091 (9th Cir. 2023) (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc)). While "[a] single contact with the forum state may be sufficient to support jurisdiction if the action 'arise[s] out of that particular purposeful contact of the defendant with the forum state," "a stronger showing of purposeful contacts with the forum state 'will permit a lesser showing' of relatedness to the litigation." Id.

Fenix appropriately points to the Circuit's observations that Fenix "'structured its sales activity in such a manner as to invite orders from [California] and developed the capacity to fill them,'" and had "over 10,000 California subscriptions," which were "part of [its] 'regular course of business,'" and garnered Fenix "$400 million dollars in annual revenue from California consumers." See Pl. Resp. at 7 (citing USCA Memo. at 3, 4).[3] The Circuit's description of Fenix, USCA Memo. at 3, 4, indeed sounds like a defendant who has "substantially engaged with the forum," see Impossible Foods Inc., 80 F.4th at 1091. Fenix's contention that it "does not 'engage in any commercial activity in California related to the allegations in Plaintiffs' [Amended] Complaint,'" see Def. Br. at 1–11 (quoting Taylor Decl. ¶¶ 5–6), does not square with the Circuit's holdings, see USCA Memo. at 3, 4, or the allegations in the complaint, see FAC.

Even if Fenix had far fewer contacts with California than it did, Plaintiffs' claims arise out of Fenix's forum-related activities. A claim arises out of a contact where, but for the defendant's contacts with the forum, the claim would not have arisen. Ziegler v. Indian

[3] Fenix's reply that by citing facts relevant to purposeful direction, Plaintiffs "collapse the second prong into the first and read it out of the three-part test entirely," Def. Reply at 7, is unpersuasive. The Ninth Circuit explains the "arise out of or relate to" element in the context of a defendant's deliberate contacts with the forum. See Impossible Foods Inc., 80 F.4th at 1091 ("a defendant who has more substantially engaged with the forum—such as one who has 'continuously and deliberately exploited' the forum state's market—will more reasonably anticipate being subject to personal jurisdiction for causes of action that do not directly arise from those contact, but that nonetheless 'relate to' them.").

River Cnty., 64 F.3d 470, 474 (9th Cir. 1995). The Circuit applied this standard recently in Doe v. Deutsche Lufthansa, 157 F. 4th 1103, 1112 (9th Cir. 2025), in which plaintiffs sued an airline for disclosing their same-sex marriage to the Saudi Arabian government. The court explained that even the tort claims arose out of the airline's California activities "because the contract for carriage into California is a but-for cause" of those claims: "[w]ithout the contract for carriage into California, [plaintiffs] would not have needed to disclose their marital status to [the airline], nor needed to interact with [the airline] at all, and so the tortious conduct would not have occurred." Id. Likewise, but for Fenix's inviting orders from California and entering into "over 10,000 California subscriptions," see USCA Memorandum at 3, 4, Plaintiffs would not have subscribed to various OnlyFans creators, thereby subjecting themselves to Fenix's alleged failures to comply with the ARL before they made payments on those subscriptions, when their credit cards were charged for those subscriptions, and when Fenix failed to provide an acknowledgement including ARL terms, the cancellation policy, and information about how to cancel those subscriptions. See FAC ¶ 20.

**2. Reasonableness**

The "reasonableness" element asks whether the exercise of jurisdiction comports with fair play and substantial justice. Schwarzenegger, 374 F.3d at 802. "'Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable.'" Ziegler v. Indian River Cnty., 64 F.3d 470, 476 (9th Cir. 1995) (quoting Roth v. Garcia Marquez, 942 F.2d 617, 625 (1991)). "If a plaintiff has successfully asserted the first two prongs of the specific personal jurisdiction test, the burden shifts to the defendant to present a 'compelling case' that jurisdiction is unreasonable." Doe, 157 F.4th at 1113. Courts are to balance seven factors to assess reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

> resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id. (quoting Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp., 905 F.3d 597, 607 (9th Cir. 2018)).

First, while Fenix is correct that the Circuit did not hold that Fenix purposely availed itself of the privilege of doing business in California, see Def. Reply at 8–9, the Circuit nonetheless observed a fair amount of purposeful interjection. The court held that "Fenix's over 10,000 California subscriptions are not 'random, isolated, or fortuitous,'" but "instead part of Fenix's 'regular course of business'" and a deliberate choice to "'structure[] its sales activity in such a manner as to invite orders from [California] and develop[] the capacity to fill them.'" USCA Memo. at 4–5.

Second, it would be some burden for Fenix to defend itself in California, as it has no offices or employees in California. See Def. Br. at 13 (citing Taylor Decl. ¶ 4). However, "'modern advances in communications and transportation have significantly reduced the burden of litigating in another country.'" Doe, 157 F.4th at 1113 (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988)). And it is hard to imagine which Fenix witnesses would need to testify given the ARL claims at issue.

Third, on the one hand, "[a] foreign nation presents a higher sovereignty barrier than that between two states," Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333 (9th Cir. 1984), and therefore "'[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field,'" Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., 480 U.S. 102, 115 (1987) (quoting United States v. First Nat'l City Bank, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)). On the other, it is hard to see how adjudicating the case in California would infringe terribly on England's sovereignty given Fenix's assertions that England could provide "relief equivalent to what [Plaintiffs] claim to seek through a public injunction," that England could or "would apply California substantive law to Plaintiffs' claims," and that England already has "at least three corresponding causes of action [to Plaintiffs' UCL claim]." Def. Br. at 6 (citing White



United States District Court
Northern District of California

Decl. ¶¶ 25–28), 9. Moreover, "'[a]lthough litigation against a foreign corporation creates a higher jurisdictional barrier than against a citizen from a sister state because important sovereignty concerns exist,' all of [Plaintiffs'] claims are under . . . California law." See X Corp. v. Ctr. for Countering Digital Hate Ltd., 724 F. Supp. 3d 921, 944–45 (N.D. Cal. 2024).

Fourth, California would be interested in adjudicating the dispute, as it involves a class of "at least 10,000 . . . Californians, seeking restitution of the tens of millions of dollars that Fenix [allegedly] tricked them out of in violation of California law." Pl. Resp. at 9. The Ninth Circuit recognizes that "states have a special interest in preventing torts committed within their borders or that cause harm to their residents." Cox v. Gritman Med. Ctr., 170 F.4th 724, 742 (9th Cir. 2026).

Fifth, Fenix asserts that it "operates the OnlyFans platform primarily from London," that "[e]vidence is likely to be in England," and that "[w]itnesses are also primarily in England and are unlikely to be in California." Def. Br. at 13. But Fenix does not specifically identify any witnesses or evidence that are in England. Most of the evidence—regarding what disclosures class members received and how much money class members paid under what circumstances—seems likely to be documentary. It is hard to imagine which Fenix witnesses would be necessary, and all of the class members are located in California. The claims are also Californian: "[b]ecause [Plaintiffs'] claims rest on the law of California . . . the United States would provide 'the most efficient judicial resolution of the controversy.'" See Ayla. LLC v. Alya Skin Pty. Ltd., 11 F. 4th 972, 984 (9th Cir. 2021).

Sixth, the Ninth Circuit has "given little weight to the plaintiff's inconvenience," Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998), but the cases that Fenix cites in which courts brushed off such inconvenience involved large corporate plaintiffs: a motion picture equipment company and a giant social media company. See Def. Br. at 13 (citing Panavision, 141 F.3d 1316, and X Corp., 724 F. Supp. 3d at 945). Here, Plaintiffs are individuals who presumably do not have such resources and who

would need to find counsel and lodging in England to participate in court proceedings.

Seventh, "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." X Corp., 724 F. Supp. 3d at 945 (citing Ayla, 11 F.4th at 984). That is not the case here.

Considered together, the reasonableness factors are mixed. Nonetheless, Fenix has not made a "compelling case" that jurisdiction in California would be unreasonable. See Doe, 157 F. 4th at 1113.

### B. Amendment

Although the Court ordered the parties to address "Plaintiffs' contention that it should have leave to amend the complaint," see Order Directing Briefing at 2, Plaintiffs clarify that their appeal "rendered those amendments unnecessary," Pl. Resp. at 13–14. This issue is therefore moot.[4]

### C. Forum Non Conveniens

The Court now turns to Fenix's argument that the Court should dismiss this case because of the forum selection clause in the OnlyFans Terms of Service. Def. Br. at 4. That clause requires OnlyFans users to pursue any claims "in the courts of England and Wales"—and a related choice of law clause requires the application of the laws of England and Wales. See id. at 1–2 (citing Taylor Decl. ¶ 9, Ex. A § 18.1, Ex. B § 18.1 Ex. A § 1.4. Ex. B § 1.4, Ex. C § 16(a), Ex. C § 16(a)). There is no dispute that Plaintiffs agreed to the Terms. See id. at 1–2 (citing Taylor Decl. ¶¶ 18–20, Exs. D & E). Plaintiffs argue instead that the forum selection clause is unenforceable. See Pl. Resp. at 1–2.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience to the parties should a § 1404(a)

---

[4] Plaintiffs add that "given that the nature of OnlyFans non-compliance with the ARL has changed over the nearly two-year delay imposed by the appeal, and in light of evidence Plaintiffs expect to uncover in early discovery, it seems likely that at some point the operative complaint will require further amendment." Id. at 14. The Court does not opine on any future request for amendment.

motion be denied." Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas, 571 U.S 49, 62 (2013). "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. at 63. A forum selection clause controls unless a plaintiff can demonstrate that "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court.'" Lewis v. Liberty Mut. Ins. Co., 953 F.3d 1160. 1165 (9th Cir. 2020) (quoting Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1088 (9th Cir. 2018)).

Plaintiffs here argue that Fenix's forum selection clause would contravene two strong California public policies—the public policy in favor of class actions and the public policy in favor of enforcing the ARL. See Pl. Resp. at 2–6. The Court agrees that there is a strong California public policy in favor of consumer class actions.

In America Online, Inc. v. Sup. Ct. of Alameda Cnty., 90 Cal. App. 4th 1, 17 (2001) ("AOL"), the California Court of Appeal commented on "the importance class action consumer litigation has come to play in this state." It then held that "[t]he unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the . . . forum selection clause." Id. at 18 (emphasis added). That court also identified another basis that would alone justify not enforcing the forum selection clause. See id. at 15 (holding that a forum selection clause and choice of law provision favoring Virginia "would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision."). Fenix contends that the CLRA basis was the only basis for the AOL court's decision. See Def. Reply at 5. The Court disagrees. AOL was clear that the unavailability of consumer class actions in Virginia was "sufficient in and by itself" to decline to enforce the forum selection clause. 90 Cal. App. 4th at 18. Moreover, the Ninth Circuit has recognized two, independent bases for the holding in AOL. See Doe 1 v. AOL



United States District Court
Northern District of California

LLC., 552 F.3d 1077, 1083 (9th Cir. 2009) (stating that AOL "held the AOL forum selection clause was unenforceable, because the clause violated California public policy on two grounds: (1) enforcement of the forum selection clause violated California public policy that strongly favors consumer class actions, because consumer class actions are not available in Virginia state courts . . . and (2) enforcement of the forum selection clause violates the anti-waiver provision of the [CLRA].") (emphasis added). It explained: "[AOL] found a California public policy against consumer class action waivers . . . that California public policy applies to California residents bringing class action claims under California consumer law." Id. at 1084.[5]

Judge Sykes relied on AOL when—looking at the same Fenix forum selection clause at issue here—she concluded that "California's strong state policy regarding consumer class actions is implicated by this case and that this policy would be wholly undermined if Plaintiffs were required to litigate in Defendants' proposed forum." Muto v. Fenix Int'l Ltd., No. 22-cv-02164-SSS-DTBx, 2024 WL 2148734, at *3 (C.D. Cal. May 2, 2024) ("California policy therefore dictates that, in such cases, the fact that transfer [to] the defendant's chosen forum would render class action relief unavailable is 'sufficient in and by itself to preclude enforcement of [a] forum selection clause.'") (quoting AOL, 90 Cal. App. 4th 1). Judge Sykes also noted that "none of the procedures in the English and Welsh courts that Defendants have identified would offer Plaintiffs the essential benefits of the class action format." Id. at *4. Notwithstanding Fenix's assertions, see, e.g., Def. Br. at 9 (citing White Decl. ¶¶ 33, 49–53), this Court also so holds, see Pl. Resp. at 2; Poe Decl. Ex. C. Forcing Plaintiffs and the class members in this case to litigate in England "would 'substantially diminish' the rights of California residents to bring consumer class actions." See N.Z. v. Fenix Int'l Ltd., No. 8:24-cv-01655-FWS-SSC, 2025 WL 1122493, at *5–6

[5] See also Baton v. Ledger SAS, 740 F. Supp. 3d 847, 893–97 (N.D. Cal. 2024) (relying on Doe 1, 552 F.3d 1077, in holding that "California public policy [] strongly favors consumer class actions" and that a forum selection clause that would send the plaintiffs' UCL claim to France—where the consumer class action format was complicated and limited, barred contingency fees and an opt-out mechanism, and required the entity that brought suit to cover all costs of litigation—was unenforceable).

(C.D. Cal. April 9, 2025) (detailing shortcomings with claim forms, group litigation orders, and representative actions in England, including "that group litigation orders and single claim forms require consumers to 'opt in,' consent to being identified as a claimant, pay a 'court issue fee,' and accept potential liability for payment of the adverse party's legal fees, and representative actions require the plaintiffs to have the 'same interest' and do not allow for 'individualized assessment of damages.'").

Fenix rejects these concerns, asserting that the 2025 California Supreme Court case of EpicentRx, Inc. v. Superior Court, 18 Cal. 5th 58 (2025), "foreclosed any argument that the forum-selection clause is unenforceable because it would violate a California policy about consumer class actions." Def. Br. at 7. EpicentRx held that, notwithstanding the importance of jury trials in California, "California public policy does not require invalidation of [a] forum selection clause in all circumstances" where "the practical effect of the forum selection clause may be that plaintiff's claims are not heard by a jury." 18 Cal. 5th at 78–79. Fenix adds that "EpicentRx came down after Muto. As such, Muto did not have the benefit of EpicentRx's July 2025 clarification of California public policy." Id. at 7 n.6.

EpicentRx indeed discusses at length the enforceability of forum selection clauses. 18 Cal. 5th at 73–84. It also includes reasoning that one can imagine might apply to forum selection clauses that impact the right to class actions. See id. at 79 (explaining that procedural rights apply to litigation in California but do not travel with litigants to forums outside of California); see Watkins v. Wachovia Corp., 172 Cal. App. 4th 1576, 1589 (2009) ("'[t]he right of a litigant to employ [class action procedure] is a procedural right only, ancillary to the litigation of substantive claims.'") (quoting Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 332 (1980)). Nevertheless, EpicentRx was careful to limit its holding to forum selection clauses that impacted the right to jury trials. See 18 Cal. 5th at 84 ("we consider in this matter only whether the lower courts were correct to decline enforcement of the forum selection clause on public policy grounds based solely on the clause's impact on plaintiff's jury trial right."); id. at 75 n.4 ("We have no occasion in this

matter to consider other potential grounds for declining to enforce a forum selection clause."). Judge Slaughter focused on this limitation when he declined to reconsider his order holding that the same Fenix forum selection clause at issue here was unenforceable as to California residents. See N.Z. v. Fenix Int'l Ltd., No. 8:24-cv-01655-FWS-SSC, 2025 WL 3626154, at *4 (C.D. Cal. Dec. 12, 2025) ("Critically, the California Supreme Court noted in EpicentRx that they 'consider[ed] in th[at] matter only whether the lower courts were correct to decline enforcement of the forum selection clause on public policy grounds based solely on the clause's impact on plaintiff's jury trial right.").[6]

This Court agrees with N.Z. The California Supreme Court might eventually side with Fenix on this issue. But it has not done so, and it is not obvious that it will do so. Accordingly, there is not "'convincing evidence'" that the California Supreme Court would part ways with AOL. See Def. Reply at 5 (quoting Munson v. Del Taco, Inc., 522 F.3d 997, 1002 (9th Cir. 2008)). Rather, "'in the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts.'" Doe v. Uber Techs., Inc., 90 F.4th 946, 949 (9th Cir. 2024) (quoting In re Kirkland, 915 F.2d 1236, 1238 (9th Cir. 1990)).

AOL requires the Court to conclude that Fenix's forum selection clause contravenes California's strong public policy in favor of consumer class actions. The Court therefore declines to dismiss the case pursuant to forum non conveniens.

### D. Interlocutory Appeal

Finally, the Court holds that interlocutory appeal of this order is appropriate. A district court may sua sponte certify an order for interlocutory appeal where it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

[6] Fenix argues that N.Z. involved a motion for reconsideration, and that whether there was a "material change in the law" is "a different standard than Rule 12 imposes." Def. Br. at 7 n.6; Def. Reply at 6–7. True, but if N.Z. shared Fenix's understanding of EpicentRx, that understanding would no doubt represent a material change in the law.

Certification depends on whether "'(1) the appeal involves a controlling question of law,' (2) there is a 'substantial ground for difference of opinion' on that question, (3) 'an immediate appeal would materially advance the ultimate termination of the litigation,' and (4) failure to certify the order 'would result in wasted litigation and expense.'" T.P. by and through S.P. v. Walt Disney Parks & Resorts U.S., Inc., 445 F. Supp. 3d 665, 668 (C.D. Cal. 2020) (quoting Hawaii ex rel. Louis v. JP Morgan & Chase Co., 921 F. Supp. 2d 1059 (D. Haw. 2013)).

All four elements are met in connection with the forum selection clause.

Whether Fenix's forum selection clause is valid in light of EpicentRx is a controlling issue of law. It is this Court's view that there is a substantial ground for difference of opinion on that question. EpicentRx articulated sensible reasons for enforcing the forum selection there, even though doing so "would effectively deprive plaintiff of its right to a jury trial." 18 Cal. 5th at 67. While some of those reasons might apply to a forum selection clause that would effectively deprive a plaintiff of its right to a class action, see, e.g., id. at 80 ("Under plaintiff's theory, any litigant who can satisfy California's jurisdiction and venue requirements could maintain an action in California so long as the litigant invokes the right to a jury trial, notwithstanding an agreement to litigate its claims in a foreign forum, if the litigant could show its jury trial rights in the foreign forum would be impaired."), EpicentRx limited its holding to jury trials, see id. at 84 (considering only forum selection clauses that rendered unavailable a plaintiff's right to a jury trial.). There is substantial ground for different opinions as to how and whether the California Supreme Court would extend its reasoning to the class action context.

In addition, an immediate appeal would both materially advance the termination of the litigation and avoid wasted litigation and expense. Without an interlocutory appeal, this matter will proceed in this Court. Plaintiffs brought suit in 2024, but because of the previous appeal, this case is only at the motion to dismiss phase. It could be a long while still (involving litigation over discovery issues, class certification issues, summary judgment, and/or trial) before the case would receive appellate review in the normal

course. If this Court is wrong in its present conclusion about the forum selection clause, then all of the parties' time spent in this district, when they should have been in England, will have been wasted. "The Court hopes to avoid this risk of unnecessary litigation." See T.P., 445 F. Supp. 3d at 671.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss the FAC, as it concludes that it has personal jurisdiction over Fenix, and the forum selection clause is unenforceable for violating California public policy. The Court further CERTIFIES this order for interlocutory appeal.

**IT IS SO ORDERED.**

Dated: October 20, 2026

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California